[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 475.]

MICHAELS, APPELLANT, *v.* FORD MOTOR COMPANY, APPELLEE.

[Cite as *Michaels v. Ford Motor Co.*, 1995-Ohio-142.]

*Torts—Negligence—Owner of construction site, by virtue of directing general contractor to perform task required by contract specifications, owes no duty of care under R.C. 4101.11 and 4101.12 to employee of subcontractor who is subsequently injured as a result of general contractor's failure to keep area where it performed the task in a safe condition.*

(No. 94-524—Submitted April 25, 1995—Decided July 12, 1995.)

APPEAL from the Court of Appeals for Lorain County, No. 93CA005603.

_____

{¶ 1} To construct a paint building at its truck plant in Avon Lake, Ohio, appellee Ford Motor Company hired Lathrop Contracting as the general contractor. Doane Electric was an electrical subcontractor on the construction site. While at the construction site, Russell Michaels, an employee of Doane Electric, sustained injuries after falling through a hole that Lathrop employees had cut in the second floor. Michaels died the next day.

{¶ 2} John T. Hoey, Jr., a Ford employee, had instructed William Haase, Lathrop's assistant superintendent, to cut holes in the floor pursuant to specifications in the construction contract between Lathrop and Ford. Thinking that the holes would not be utilized immediately and that floor openings were a safety concern, Haase had objected to cutting the holes at that time. However, there was evidence that the holes were needed so that paint boxes could be designed and fabricated to fit inside the holes. Responding to Haase's concerns, Hoey had stated, "[Y]ou've got a job to do friend, you've got a contract, you cut the holes and you cover them." In point of fact, pursuant to its contract with Ford, Lathrop was

responsible for providing and maintaining barricades and guard rails around floor openings until the openings were enclosed by permanent construction.

{¶ 3} After Lathrop employees cut the hole through which Michaels would later fall, they covered the hole with a piece of plywood without securing the plywood to the floor. No one from Ford told any Lathrop employee how to cover any of the holes, including the one through which Michaels fell.

{¶ 4} On February 21, 1990, a foreman of Doane Electric instructed Michaels, Daniel Edgar, and another Doane Electric employee to clear an area on the second floor, where they were going to install an electrical panel. While they were cleaning debris from the area, Edgar moved the loose piece of plywood covering the hole in the floor that Lathrop employees had cut. Edgar warned Michaels, who had his back to Edgar, not to move the piece of plywood because it was covering a hole. About fifteen minutes later, Edgar discovered that Michaels had fallen through the hole to the floor below. No one had witnessed the fall. The day after the accident occurred, Lathrop employees secured with screws the piece of plywood covering the hole.

{¶ 5} Pursuant to R.C. 2125.01, appellant Glenn Michaels, the administrator of the estate of Russell Michaels, filed a wrongful death action against the Ford Motor Company, asserting that Ford violated its duties under R.C. 4101.11 and 4101.12 by failing to provide Michaels, a frequenter, with a safe place of employment. The Court of Common Pleas of Lorain County granted Ford's motion for summary judgment, finding that Ford did not owe Michaels a duty to provide a safe workplace.

{¶ 6} Affirming the judgment of the trial court, the court of appeals held that Ford did not owe a duty of care to Michaels. The court reasoned that R.C. 4101.11 and 4101.12 did not apply because Ford did not have "custody or control" over Michaels or the area surrounding the floor opening on the day of his fall. The court explained that Ford merely had acted in a supervisory capacity at the

2

construction site by monitoring work progress and ensuring that construction was completed according to specifications.

{¶ 7} The cause is now before this court pursuant to the allowance of a discretionary appeal.

————————————

*Spangenberg, Shibley, Traci, Lancione & Liber, John D. Liber* and *Justin F. Madden,* for appellant.

*Thompson, Hine & Flory, S. Stuart Eilers, Timothy J. Coughlin* and *Michael E. Smith*, for appellee.

————————————

**WRIGHT, J.**

{¶ 8} The issue in this case is whether an owner of a construction site, by virtue of directing a general contractor to perform a task required by contract specifications, owes a duty of care under R.C. 4101.11 and 4101.12 to an employee of a subcontractor who is subsequently injured as a result of the general contractor's failure to keep the area where it performed the task in a safe condition. The answer to this query is "no."

{¶ 9} R.C. 4101.11 states: "Every employer * * * shall furnish a place of employment which shall be safe for the employees therein *and for frequenters thereof*, shall furnish and use safety devices and safeguards, * * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees *and frequenters*." (Emphasis added.) R.C. 4101.12 similarly imposes a duty upon an employer to provide employees and frequenters with a safe place of employment.[1] As used in these two sections, "frequenter" means "every

_____

1. That section provides: "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect

person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."  R.C. 4101.01(E).

**{¶ 10}** The question in this case is whether Ford was an "employer" as to Michaels within the meaning of the frequenter statutes.  Ford owed Michaels a duty to provide a safe place of employment only if it was an "employer" under the frequenter statutes.[2]  If Ford was not an "employer," the frequenter statutes simply do not apply.  See *Comerford v. Jones & Laughlin Steel Corp.* (1959), 170 Ohio St. 117, 10 O.O.2d 11, 162 N.E.2d 861, syllabus.

**{¶ 11}** R.C. 4101.01(C) defines "employer" as "every person, firm, corporation, agent, manager, representative, or other person *having control or custody* of any employment, place of employment, or employee."  (Emphasis added.)  It is undisputed that Ford did not have custody or control of Michaels or his employment.  Therefore, the only remaining issue is whether Michaels was a frequenter of a place of employment that was under the custody or control of Ford.

**{¶ 12}** On a case-by-case basis, this court has articulated the legal principles governing whether an owner (or a general contractor)[3] owes a duty of care under the frequenter statutes because it has custody or control of the employee, employment, or place of employment.  In *Wellman v. E. Ohio Gas Co.* (1953), 160

---

the life, health, safety, and welfare of such employees or frequenters.  No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

2.  If Ford did not owe Michaels a duty of care under the frequenter statutes, it did not owe him a common-law duty of care because the frequenter statutes impose essentially the same duty of care upon an owner or occupier of property as that imposed at common law.  See *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165, 1167; *Westwood v. Thrifty Boy Super Markets, Inc.* (1972), 29 Ohio St.2d 84, 58 O.O.2d 154, 278 N.E.2d 673, paragraph one of the syllabus.

3.  As is evident from our cases, when determining if a duty of care is owed pursuant to the frequenter statutes, the legal test is the same for owners and general contractors:  Did the party have custody or control of the injured employee, the employment, or the place of employment?  The answer to this question obviously depends upon the specific circumstances of each case, not the general status of the parties.

Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph one of the syllabus, we held: "Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor."

{¶ 13} In *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, syllabus, we created an exception to the general rule: "One who engages the services of an independent contractor, and who *actually participates* in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." (Emphasis added.) In *Hirschbach*, we concluded that the jury could reasonably find the owner liable for the death of an independent contractor's employee because the owner "interfered with the *mode* of the job operation," "*actually participated* in the job operation by dictating the manner and mode in which the winching phase of the job was to be performed," and "had sole control over the safety features necessary to eliminate the hazard." (Emphasis added.) *Id.* at 208, 6 OBR at 261, 452 N.E.2d at 329.

{¶ 14} In *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, this court refined the *Hirschbach* exception and held in the syllabus that "[a] general contractor who has not *actively participated* in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work."[4] (Emphasis added.) In *Cafferkey*, we concluded that the general contractor did not owe a duty of care to two employees of a

---

4. As we previously have noted, a subcontractor who works at a construction site is engaged in inherently dangerous work. See *Bond, infra*, at 334, 650 N.E.2d at 418.

subcontractor who were injured at the construction site. We explained that although the general contractor had retained the ability to coordinate the activities of the subcontractor in order to ensure compliance with contract specifications, the general contractor did not "*control the means or manner*" of the subcontractor's performance. (Emphasis added.) *Id.* at 113, 21 OBR at 418, 488 N.E.2d at 192.

**{¶ 15}** Most recently, in *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 650 N.E.2d 416, syllabus, this court held that the term "actively participated" means "directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." We explained that the distinguishing factor between *Wellman* and *Hirschbach* was that "the party who hired the independent contractor in *Wellman* had inspectors at the job site, but only to ensure that the job was completed according to specifications." *Id*. at 335, 650 N.E.2d at 419. In *Bond*, we also emphasized that a party's "retention of the authority to monitor and coordinate activities" does not constitute "active participation." *Id.* at 337, 650 N.E.2d at 420.

**{¶ 16}** In the case before us, Ford exercised its proper supervisory role by monitoring work progress at the construction site, interpreting plans and specifications, and ensuring that construction was completed according to required specifications. As part of its supervision, Ford directed Lathrop, the general contractor, to cut floor openings as required by contract specifications. Applying the *Bond* definition of "actively participated," the "activity which resulted in the injury" to Michaels and the "critical act" that led to Michaels' injury was the failure to adequately safeguard the hole through which Michaels fell. Ford neither directed Lathrop as to the manner in which the latter should safeguard the floor opening nor gave or denied permission with regard to the way in which the hole was covered. Much to the contrary, Ford retained no custody or control over the area where Lathrop cut the hole through which Michaels subsequently fell. Nor did Ford retain

6

control over the means or manner of Lathrop's or Doane Electric's performance of any of their duties at the construction site. Cf. *Hirschbach, supra* (where the owner directed the manner in which an independent contractor performed an inherently dangerous job).

**{¶ 17}** "Supervision of a construction job, i.e., coordinating work and directing contractors to perform tasks in accordance with contract specifications, has never constituted 'active participation' in the work of an independent contractor. The very nature of the construction business requires a general contractor or the owner of a construction site to 'supervise' a construction job." *Bond*, at 339, 650 N.E.2d at 422 (Wright, J., concurring). An owner of a construction site who merely directs an independent contractor to perform a task required by contract specifications but does not retain control over the means or manner in which that task is performed does not owe a duty of care to an employee of a subcontractor who is subsequently injured as a result of the other contractor's performance of the task in an unsafe manner.

**{¶ 18}** As a matter of law, Ford owed no duty of care to Michaels under the frequenter statutes. Accordingly, the trial court and the court of appeals properly concluded that Ford was entitled to summary judgment.

*Judgment affirmed.*

MOYER, C.J., and COOK, J., concur.

F.E. SWEENEY, J., concurs in judgment only.

DOUGLAS, RESNICK and PFEIFER, JJ., dissent.

—————————————