86 F.3d 1156
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Debra MADDOX, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 No. 94-4153.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1996.
 
 Before: KEITH, SILER, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Debra Maddox appeals the district court's award of summary judgment in favor of defendant Ford Motor Company in her complaint alleging negligence and intentional tort in the death of her husband. Jurisdiction below was based on diversity of citizenship, and the central question before the district court was whether Ford owed Debra Maddox's husband any duty under Ohio law as an employee of Ford's independent contractor. After careful review of the record, we affirm the order of the district court granting summary judgment in favor of the defendant.
 
 I.
 
 2
 Debra Maddox is the surviving spouse and administratrix of the estate of George "Steve" Maddox. Steve Maddox was employed as an installation supervisor by L.O. Warner, Inc., an independent contractor which installed a "chiller" cooling system at Ford's Lima Engine Plant. The chiller, while still under warranty, developed a low-pressure gas fault--a leak--and Steve Maddox was sent to repair the unit.
 
 
 3
 Steve Maddox first arrived at the Ford plant to repair the chiller on February 13, 1992. Before he could begin work on the unit, Maddox had to comply with several of Ford's safety procedures. First, he obtained a "hot work permit", which is issued for safety reasons by Ford to workers who will be using a torch. The permit allowed Maddox to light a torch to braze the leak. Second, he undertook "lockout" procedures which involved cutting off electricity running to the chiller and placing a lock on the electrical hookup so that no one could inadvertently turn on the unit. Gary Weiging, a machinist at Ford, was assigned to "learn, observe and assist [Maddox] when necessary." Weiging had no experience or training with such repairs or attendant hazards. Brad Crawford, a Ford engineer, periodically checked on Maddox during the repair.
 
 
 4
 Maddox discovered the leak on February 13 and returned the next day to make the repair. He attempted to repair the leak by crawling into the chiller unit which was enclosed on all sides with the exception of two access doors on the front. Weiging assisted Maddox by holding a light and supplying him with solder. Maddox undertook a procedure to evacuate freon from the chiller lines and then attempted to braze them to seal the leak. While attempting to braze the lines using a torch and solder, the flame from Maddox's torch turned from yellow to green. Weiging observed this happen twice, and each time Maddox turned his head away from the flame as though he were encountering a bad smell.
 
 
 5
 Considering the facts in the light most favorable to the plaintiff, Maddox, while brazing the chiller lines, inhaled phosgene. Phosgene is a lethal gas formed when freon is exposed to an open flame. The deposition of Debra Maddox indicates that after repairing the leak, her husband went to his truck to lie down where he was ill for several hours. Steve Maddox had recurring and worsening episodes of nausea, inability to sleep, vomiting, chest pain and numbness following the chiller repair until his death twelve days later.
 
 
 6
 Debra Maddox filed suit in district court for negligence and intentional tort, alleging that Ford failed to provide information and training on hazardous chemicals in the work area, which proximately caused her husband's death. Ford moved for summary judgment, maintaining that it did not owe any duty to Steve Maddox as he was an employee of an independent contractor involved in an inherently dangerous activity. Summary judgment was granted by the district court, leading to this appeal.
 
 II.
 
 7
 We conduct a de novo review of the district court's award of summary judgment. Harrow Prods., Inc. v. Liberty Mutual Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995). We assess the record in the light most favorable to the non-movant drawing all reasonable inferences in its favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-movant, in order to prevail, must show sufficient evidence to create a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). If the disputed evidence is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.
 
 
 8
 Debra Maddox first contends in her appeal that the district court improperly applied Ohio law governing the duty that Ford owed to her husband as an employee of Ford's independent contractor. There is no dispute that Steve Maddox's repair of the chiller unit was an inherently dangerous activity. In Ohio, one who hires an independent contractor to perform inherently dangerous work is ordinarily not liable for injuries suffered by employees of the independent contractor. Wellman v. East Ohio Gas Co., 113 N.E.2d 629 (Ohio 1953). The Ohio Supreme Court carved out an exception to this general rule in Hirschbach v. Cincinnati Gas & Elec. Co., 452 N.E.2d 326 (Ohio 1983). The Hirschbach exception provides:
 
 
 9
 One who engages the services of [an] independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of [an] employee of the independent contractor. Id. (syllabus) (emphasis added).
 
 
 10
 The Ohio Supreme Court further refined this exception in Cafferkey v. Turner Constr. Co., 488 N.E.2d 189 (Ohio 1986), holding that "[a] general contractor who has not actively participated in [a] subcontractor's work, does not, merely by virtue of supervisory capacity, owe a duty of care to employees of [the] subcontractor who are injured while engaged in inherently dangerous work." Id. (syllabus) (emphasis added). The Ohio Supreme Court has held that the term "actively participated" means "directed [the] activity which resulted in injury and/or gave or denied permission for the critical acts that led to employee's injury, rather than merely exercising a general supervisory role over a project." Bond v. Howard Corp., 650 N.E.2d 416 (Ohio 1995) (syllabus). "[R]etention of authority to monitor and coordinate activities does not constitute active participation." Michaels v. Ford Motor Co., 650 N.E.2d 1352 (Ohio 1995) (syllabus).[1]
 
 
 11
 We agree with the district court that the level of Ford's participation in the chiller repair was not sufficient to create a duty of care under the Hirschbach line of cases. Ford's concern for the safety of all workers at its facility, including independent contractors, was reflected in the statements of Ford employees and its safety policies and procedures. However, a general concern for the safety of independent contractors does not create a duty of care. While Ford required Steve Maddox to obtain a "hot work" permit and undergo "lockout" procedures, lighting his torch and shutting off electricity to the chiller were not the critical acts that led to his alleged injury. Rather, the critical act involved the method of evacuating and brazing the lines which Maddox chose to undertake. Ford did not direct Maddox on how to undergo this procedure nor did it give or deny permission on the method that Maddox should utilize. See Michaels, 650 N.E.2d at 1355-56. The Cafferkey decision illustrates that retention of control over certain safety procedures does not constitute active participation in the job operation. See Cafferkey, 488 N.E.2d at 191.
 
 
 12
 Similarly, while Ford employee Weiging arguably had some participation in the repair of the chiller, his involvement does not meet the active participation standard as explained in Bond. In holding a flashlight and handing materials to Steve Maddox. Weiging did not direct the activity which allegedly resulted in injury. See Bond, 650 N.E.2d at 420-21. While Crawford checked on Maddox during the repair, the mere retention of authority to monitor and coordinate activities does not constitute active participation. Michaels, 650 N.E.2d at 1355-56. In upholding a lower court decision in Bond, the Ohio Supreme Court cited the lower court's reasoning that a "mere concern for safety" is not enough to constitute active participation under Cafferkey. Bond, 650 N.E.2d at 420.
 
 
 13
 Debra Maddox further argued that a violation of the Occupational Safety and Health Act (OSHA) constitutes negligence per se or at least evidence of negligence, and therefore her expert witness's affidavit alleging two OSHA violations should have defeated the motion for summary judgment. The Ohio Supreme Court's recent ruling in Hernandez v. Martin Chevrolet, 649 N.E.2d 1215 establishes that OSHA violations do not constitute negligence per se in Ohio. The Ohio Supreme Court reached this result by first determining that OSHA was not intended to affect the duties owed by employers for the safety and protection of others. The Court cited OSHA's preamble which provides:
 
 
 14
 Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment. 29 U.S.C. 653(b)(4); Hernandez, 649 N.E.2d at 1216 (emphasis added).
 
 
 15
 Having already established that Ford owed Steve Maddox no duty of care under common law in Ohio, the Hernandez ruling makes it clear that OSHA does not create such a duty.
 
 
 16
 Finally, Debra Maddox asserts that the district court improperly granted summary judgment as discovery was ongoing. While summary judgment should not be granted before the parties are given adequate time for discovery, White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231-32 (6th Cir.1994), a grant of summary judgment should not be reversed because a party claims it received inadequate time for discovery absent an abuse of discretion. Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir.1995), cert. denied, --- S.Ct. ----, 1996 WL 122479 (U.S. April 22, 1996).
 
 
 17
 Debra Maddox had the burden of showing, by affidavit, why she was unable to oppose the motion for summary judgment due to insufficiency of discovery. Fed.R.Civ.P. 56(f); Klepper v. First Am. Bank, 916 F.2d 337, 343 (6th Cir.1990). Maddox, who had a year for discovery before Ford filed its motion for summary judgment and an additional nine months before the court ruled on it, acknowledges that she did not file a Rule 56 affidavit.[2] In this court's decision in Klepper, the plaintiff had no opportunity for discovery because of a court stay. The Klepper panel nonetheless ruled that the trial court did not abuse its discretion in granting summary judgment because the plaintiff failed to comply with Rule 56. Id.
 
 
 18
 In support of her position that the filing of a Rule 56 affidavit is not dispositive, Debra Maddox cites Vega v. First Federal Sav. & Loan Ass'n, 622 F.2d 918 (6th Cir.1980), where this court reversed summary judgment due to insufficient discovery in the absence of any Rule 56 affidavit. In Vega, the defendant refused to provide any information requested in two sets of interrogatories filed by the plaintiff. Id. at 926. The rule established in Vega was that "[p]rior to deciding ... a factual issue by means of summary judgment, a district court must provide both parties an opportunity to conduct some discovery." Bilderback v. City National Bank & Trust Co., 639 F.2d 331, 332 (6th Cir.1980) (emphasis added).
 
 
 19
 The record does not indicate any abuse of discretion by the district court. The parties had been engaged in discovery for a year and nine months before summary judgment was granted. In fact, plaintiff in her brief opposing summary judgment makes no mention of inadequate discovery.
 
 III.
 
 20
 In sum, the district court properly awarded summary judgment in favor of Ford, and the judgment is AFFIRMED.
 
 
 
 [1]
 Relying on dictionary definitions of the terms "actual" and "active", Debra Maddox asserts that the district court erred by using the terms interchangeably. Maddox contends that these are two different standards and that the "actual" participation standard should be applied in this case. As the Ohio Supreme Court explained in Michaels, however, the line of cases following Hirschbach simply served to refine the Hirschbach actual participation standard. Michaels, 650 N.E.2d at 1355-56. Recent cases have substituted the term "active" in describing this refined standard
 
 
 [2]
 Maddox contends that this was due to the district court's unwillingness to entertain any formal discovery motions