DECISION AND JUDGMENT ENTRY
Merillat Industries, Inc. ("Merillat"), appeals from the judgment of the Jackson County Court of Common Pleas. Merillat contends that the trial court erred in denying its motions for a directed verdict, judgment notwithstanding the verdict and a new trial. Because we find that there was sufficient credible evidence to permit reasonable minds to reach different conclusions about whether Merillat maintained sole control of a critical factor in the accident, we disagree. Merillat also argues that the trial court should have granted it a new trial because the jury's allocation of comparative negligence is against the manifest weight of the evidence. Because we find that some competent, credible evidence supports the jury's allocation of negligence, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
DePugh and Shoultz, employees of S.O.S. Electric ("SOS"), were involved in an accident while performing inherently dangerous work at Merillat as independent contractors.
DePugh and Shoultz sought to recover from Merillat for their injuries, while their wives claimed loss of consortium.
The trial court initially granted summary judgment in favor of Merillat. However, we reversed that ruling and remanded the case back to the trial court in DePugh v. Merillat Industries, Inc. (1998), Jackson App. No. 97CA801, unreported.
At trial, the following evidence was undisputed. DePugh and Shoultz worked as journeymen electricians for SOS. Merillat has a cabinet making facility located in Jackson, Ohio. On March 13, 1995, Merillat requested that SOS provide electrical repair service at its Jackson plant. SOS dispatched DePugh and Shoultz, who, after arrival at Merillat, found that they needed to install a new wire to the main 480-volt electrical panel. The wire from the electrical panel, located in the motor control center ("MCC room"), ran underground through a conduit to another building. Several additional wires also ran from the panel to other areas of the Merillat facility. Roughly 60% of the facility's electric is supplied through this panel.
After inspecting the damaged wire, Shoultz asked Ron Gordon, Merillat's plant engineer at the time, whether the electricity to the panel could be shut down. Gordon responded that he could not shut off the electricity to the panel. DePugh and Shoultz then determined that while the panel remained energized, they could run a wire through a second parallel conduit to avoid removing the damaged wire. DePugh and Shoultz decided to measure the distance the wire would have to travel in the second conduit with a "fishtape." The fishtape was part way through the conduit when it got stuck. As DePugh and Shoultz began pulling the fishtape back out, an explosion occurred in the MCC room. Both men suffered burns from the explosion. There was disputed evidence at trial as to whether the explosion originated from a spark that occurred due to the fishtape coming into contact with the electrical panel.
At trial, the DePughs and Shoultzs were unable to present evidence concerning the cause of the initial spark, but theorized that the cause of the initial spark could have been from a loose wire or from dust or water in the panel.
Gilbert Snyder, an Industry Safety Consultant, testified that the presence of airborne sawdust was a primary factor in the resulting explosion. He conceded that there was not a significant amount of airborne dust when DePugh and Shoultz began work and that something caused the dust to become airborne.
Shoultz testified that he could see back into the electrical panel where there was dust or sawdust. He explained that there is always a concern that the fishtape may touch the electrified panel and sometimes takes precautions, such as placing cardboard over the exposed electrified surfaces, to prevent the possibility.
DePugh testified that he normally does not place cardboard over the exposed electrified surfaces when working with a fishtape because the worst that could happen is that the fishtape would be ruined.
At the close of the plaintiffs' case, Merillat moved for a directed verdict, which the trial court denied.
As part of Merilatt's case, Charlie Scherer, part owner of SOS electric, testified that he investigated the explosion. He commented that he had never seen airborne dust in the MCC room at Merillat even though he had worked there before. He informed Merillat that they needed to clean the sawdust from the MCC room for reliability reasons. According to Gordon, he told DePugh and Shoultz that if they felt they needed to shut off the electricity, then they needed to see Charlie. Merillat presented evidence showing that a spark occurred as the fishtape exited the conduit and touched a buss in the energized panel.
The jury returned a verdict in favor of the DePughs and Shoultzs. In response to interrogatories, the jury found that Merillat actively participated in the work of DePugh and Shoultz by: "wanting the work done immediately[,] unwilling to turn power off [, and] failure to clean MCC room." The jury also concluded that Merillat was 100% negligent, while DePugh and Shoultz were 0% negligent in performing the work.
Merillat filed a motion for judgment notwithstanding the verdict and/or a motion for a new trial, arguing that Merillat did not owe DePugh and Shoultz a duty of care as a matter of law since Merillat did not actively participate in the work. Merillat also argued that finding Merillat 100% negligent and DePugh and Shoultz 0% negligent was against the manifest weight of the evidence. The trial court denied these motions. Merillat appeals and asserts the following assignments of error:
 THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR DEFENDANT-APPELLANT MERILLAT INDUSTRIES, INC., WHEN THE EVIDENCE PRESENTED AT TRIAL DEMONSTRATED THAT, AS A MATTER OF LAW, MERILLAT OWED NO DUTY OF CARE TO APPELLEES.
 THE TRIAL COURT ERRED IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT WHEN THE EVIDENCE DEMONSTRATED THAT MERILLAT OWED NO DUTY OF CARE TO APPELLEES.
 THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL WHEN THE FINDING OF NO NEGLIGENCE ON THE PART OF APPELLEES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II.
In its first and second assignments of error, Merillat contests the trial court's failure to grant a directed verdict and judgment notwithstanding the verdict, respectively. The same legal standard is used in determining a motion for a directed verdict and a motion for judgment notwithstanding the verdict. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 679. Thus, we consider Merillat's first two assignments of error together.
Civ.R. 50(A)(4) provides:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
This rule requires the trial court to give the non-moving party the benefit of all reasonable inferences that may be drawn from the evidence. Keeton v. Telemedia Co. of Southern Ohio (1994),98 Ohio App.3d 405, 408, citing Broz v. Winland (1994), 68 Ohio St.3d 521,526. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus. See, also, Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284-285.
Although a motion for directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Id. at 68-69. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Howell v.Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13; Keeton,98 Ohio App.3d at 409.
When reviewing a trial court's disposition of a Civ.R. 50(B) motion forjudgment notwithstanding the verdict, we apply the same test we apply in reviewing a directed verdict. Pariseau v. Wedge Products, Inc. (1988),36 Ohio St.3d 124, 127; Howell v. Dayton (1995), 102 Ohio App.3d 6, 13. However, a motion for judgment notwithstanding the verdict is evaluated on all evidence presented at trial, while a motion for a directed verdict may be evaluated on the evidence presented only during the plaintiff's case in chief. Chemical Bank of New York v. Newman (1990),52 Ohio St.3d 204, 206-207. The evidence admitted at trial must be construed most strongly in favor of the non-moving party, and, where there is evidence to support the non-moving party's position, the motion must be denied. Pariseau at 127.
To establish a cause of action for negligence, a plaintiff must show that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and plaintiff suffered injury as a proximate result of the defendant's breach. Jeffers v. Olexo (1989), 43 Ohio St.3d 140,142; Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,77. See, also Frost v. Dayton Power and Light Co. (2000),138 Ohio App.3d 182, 188. Whether a legal duty exists normally is a question of law for the court to determine. Mussivand v. David (1989),45 Ohio St.3d 314, 318.
In negligence cases involving inherently dangerous work, the owner of the premises generally does not owe a duty to the independent contractor. Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103, paragraph two of the syllabus. In Wellman, the Court stated:
Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.
Id. at paragraph one of the syllabus. The independent contractor remains primarily responsible for protection of its employees. Eicher v.U.S. Steel Corp. (1987), 32 Ohio St.3d 248, 250.
However, an exception to the general rule exists when there has been "active participation" by the owner of the premises in the work being performed by the independent contractor. Hirschbach v. Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206, syllabus. See, also, Michaels v.Ford (1995), 72 Ohio St.3d 475, 478; Bond v. Howard Corp. (1995),72 Ohio St.3d 332, 335; Cafferkey v. Turner Constr. Co. (1986),21 Ohio St.3d 110, 112. Active participation exists in two types of situations. First, a duty of care may exist if the owner of the property either "directs or exercises control over the work activities of the independent contractor's employees." Sopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628, 643. Second, a duty of care may arise if the owner "retains or exercises control over a critical variable in the workplace" even if the owner does not participate in the work activities. Id.
In Hirschbach, supra, an independent contractor was hired to replace several conductors at a job site. It was customary in this type of job to have a winch tractor located several hundred feet away from the base of the electrical tower. Prior to the accident, Hirschbach and several of his linemen discussed repositioning the winch tractor, which would have required the removal of a chain link fence and the placement of the tractor on another's property. The inspector of the job site refused to reposition the winch tractor. As a result, the tower partially collapsed and Hirschbach fell to his death. The Court held that the company had "sole control over the safety features necessary to eliminate the hazard" and by refusing to reposition the winch tractor, had "actually participated in the job operation by dictating the manner and mode in which * * * the job was to be performed." Hirschbach,6 Ohio St.3d at 207. The Court implied that whether one who engaged the services of an independent contractor had sole control over the safety features necessary to eliminate a hazard is a factual question to be determined by the jury. Hirschbach, 6 Ohio St.3d at 209.
In Sopkovich, Ohio Edison hired an independent contractor to paint an electric substation. Ohio Edison was unable to stop the flow of electricity through the substation, but was able to stop the flow of electricity through certain areas. Each day, a representative from Ohio Edison would inform the independent contractor about which conductors were energized and which were deactivated. An independent contractor was injured while painting an activated substation. The Court held that Ohio Edison had a duty arising from active participation even though it did not participate in specific work activities, because Ohio Edison retained and exercised exclusive control over a critical variable in the working environment, the deactivation of conductors in the work area.
In this case, it is undisputed that DePugh and Shoultz were performing inherently dangerous work. The job required the skills of trained electricians who were familiar with working around high voltage electricity. In fact, Merillat called SOS to perform the job since there was no one trained at Merillat's plant to perform this type of dangerous electrical work. Therefore, in order for Merillat to owe a duty of care to DePugh and Shoultz, Merillat must have somehow "actively participated" in the job.
Since both sides concede that Merillat in no way controlled or directed DePugh and Shoultz's work activities, this case does not fall into the first category of the exception to the general rule. Instead, we must decide if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on whether Merillat actively participated by controlling a critical variable in the work place.
Merillat argues that it did not actively participate in DePugh and Shoultz's work and, therefore, owed no duty to them. Merillat asserts that the critical act here is DePugh and Shoultz's decision not to insulate or isolate the electrical panel to prevent contact.
The DePughs and Shoultzs argue that the failure of Gordon to turn off the power to the electrical panel, along with the presence of sawdust in the MCC room, was enough to establish control over a critical variable of the job and create a duty that Merillat owed to DePugh and Shoultz.
Here, viewing the evidence in favor of the nonmovants, we find that there is sufficient credible evidence to permit reasonable minds to reach different conclusions on the issue of whether Merillat had control over a critical variable in the working environment,[1] and thus actively participated in SOS's work. Even though DePugh and Shoultz had several options to deal with the inherent danger of the job, Merillat had sole control of the very things that made the situation dangerous: the electric current and the condition of the MCC room. Synder testified that the sawdust was the most important factor in the explosion. By refusing to turn off the electric current and failing to clean the MCC room, Merillat retained that sole control. The fact that DePugh and Shoultz had several options to deal with the electric current does not negate the sole control maintained by Merillat. Accordingly, we find that reasonable minds could differ about whether Merillat maintained sole control over a critical factor in the explosion. Therefore, Merillat was not entitled to a directed verdict or a judgment notwithstanding the verdict. Thus, we overrule Merillat's first and second assignments of error.
 III.
In its third assignment of error, Merillat argues that because the jury's allocation of comparative negligence is against the manifest weight of the evidence, the trial court erred in failing to grant a new trial.
Civ.R. 59(A) provides:
 A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
* *
 (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case.
* *
The trial court has broad discretion in deciding whether to grant a new trial under either Civ.R. 59(A)(6), and a reviewing court will not reverse the trial court's decision absent an abuse of that discretion.Pena v. Northeast Ohio Emergency Affiliates (1995), 108 Ohio App.3d 96,103. A court does not abuse its discretion unless its action implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id.;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Under Civ.R. 59(A)(6), a movant is entitled to a new trial if the jury award is against the weight of the evidence. A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when some competent, credible evidence supports the judgment. C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279, 376, syllabus; Pena at 104.
Here, DePugh testified that while he is always concerned about a fishtape making contact with an electrified panel, the worst result would be a ruined fishtape. Shoultz also testified that he considers each job to determine if placing a barrier over the electrical panel is necessary when using a fishtape.
The DePughs and Shoultzs' expert testified that the presence of airborne sawdust was a primary factor in the resulting explosion. Marty McCartney, a journeyman electrician employed by SOS, testified that after the explosion, he saw smoldering sawdust inside the removable panels in the MCC room. Thus, there is some competent, credible evidence that DePugh and Shoultz acted reasonably in using the fishtape without placing a barrier over the electrical panel and by not appreciating the extent to which sawdust permeated the MCC room. There is also some competent, credible evidence that Merillat acted negligently as discussed in section II of this opinion. Therefore, there is some competent, credible evidence supporting the jury's verdict that DePugh and Shoultz were not negligent while Merillat was negligent, and the verdict is not against the manifest weight of the evidence. Accordingly, we find that the trial court did not abuse its discretion in determining that Merillat was not entitled to a new trial. We overrule Merillat's third assignment of error.
JUDGMENT AFFIRMED.[2]
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Dissents with attached Dissenting Opinion.
Harsha, J.: Concurs in Judgment and Opinion as to Assignments of Error I and II; Dissents as to Assignment of Error III.
Roger L. Kline, Judge.
[1] Although a review of a motion for a directed verdict and a motion for a judgment notwithstanding the verdict requires us to view different portions of the trial, here the issue focuses on the evidence presented in the plaintiffs' case, so we limit our discussion to this evidence.
[2] Article IV, Section 3(B)(3) of the Ohio Constitution provides that "no judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Because only Judge Harsha would find that the trial court erred in denying the motion for new trial pursuant to Civ.R. 59(A)(6) (Judge Abele would not reach the third assignment of error), a concurrence of three judges does not exist. Thus, we affirm the judgment of the trial court even though no majority exists as to the outcome of the third assignment of error. See Ruta v. Breckenridge (1987),69 Ohio St.2d 66, 67 (anytime an appellate court weighs the evidence, the unanimity rule applies.