[Cite as *Salvati v. Anthony-Lee Screen Printing, Inc.*, 2018-Ohio-2935.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106345

---

**ROBERT A. SALVATI**

PLAINTIFF-APPELLANT

vs.

**ANTHONY-LEE SCREEN PRINTING, INC.**

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-859489

**BEFORE:** Stewart, J., E.T. Gallagher, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 26, 2018

**ATTORNEY FOR APPELLANT**

R. Craig McLaughlin
Elk & Elk Co., Ltd.
6105 Parkland Boulevard, Suite 200
Mayfield Heights, OH 44124


**ATTORNEY FOR APPELLEE**

Patrick S. Corrigan
Patrick S. Corrigan, Esq.
55 Public Square, Suite 930
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} Plaintiff-appellant Robert A. Salvati, an independent construction contractor hired to build an enclosure around a compressor that powered an exhaust fan owned by defendant-appellee Anthony-Lee Screen Printing, Inc. ("Anthony-Lee") injured himself when he put his hand inside the fan. Claiming that he had been unaware that the fan was operating at the time and that the dark room prevented him from seeing clearly, Salvati brought this negligence action against Anthony-Lee, alleging that it negligently removed filters that would otherwise guard the fan and failed to maintain adequate lighting in the area. He also alleged that Anthony-Lee was in violation of the Ohio Basic Building Code and regulations issued by the Occupational Safety and Health Administration ("OSHA").

{¶2} Anthony-Lee filed a motion for summary judgment, arguing that Salvati was an independent contractor to whom it owed no duty of care and that the exposed fan blades were a condition known to Salvati. The court characterized Salvati as a frequenter and held that Anthony-Lee owed a duty to warn of abnormally dangerous conditions that were not known to Salvati. Because Salvati admitted in discovery that he had been aware of the dangers posed by the unguarded fans and the lack of lighting in the enclosure, the court found that Anthony-Lee had no duty to warn and granted summary judgment. The sole assignment of error contests the summary judgment.

**{¶3}** To establish actionable negligence, one must show that there was a duty, that the duty was breached, and that an injury resulted from the breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). When the alleged negligence occurs on a construction site, the owner of the site "shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof[.]" R.C. 4101.11. A "frequenter" means "every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser." R.C. 4101.01(E). "An independent contractor who is working on the premises and is not a trespasser is a business frequenter." *Alapi v. Colony Roofing, Inc.*, 8th Dist. Cuyahoga No. 83755, 2004-Ohio-3288, ¶ 29.

**{¶4}** Subcontracting work on construction sites is considered "inherently dangerous work." *Michaels v. Ford Motor Co.*, 72 Ohio St.3d 475, 478, 650 N.E.2d 1352 (1995), fn. 4. When work is inherently dangerous, the owner of the premises owes no duty to an independent contractor unless the owner has actual or constructive notice of a dangerous condition and the independent contractor does not. *Davis v. Charles Shutrump & Sons Co.*, 140 Ohio St. 89, 42 N.E.2d 663 (1942), paragraph one of the syllabus. If the dangerous condition is open and obvious, the owner of the premises owes no duty of care to persons lawfully on the premises. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 14; *Goodman v. Orlando Baking Co.*, 8th Dist. Cuyahoga No. 97170, 2012-Ohio-1356, ¶ 21.

{¶5} Viewing the facts most favorably to Salvati, *see* Civ.R. 56(C), shows that Anthony-Lee hired Salvati to build doors on a room that contained an air compressor used to exhaust fumes from a paint spray booth. The compressor had a large fan that was covered by filters, but at the time of Salvati's accident, only four of the eight filters were in place. The fan was temperature-controlled and ran only when the temperature in the room reached a predetermined level.

{¶6} The fan was operating when Salvati and his crew installed the doors. Salvati's brother stated that he and Salvati discussed that the fan was running and "it was talked about it was dangerous and we had to be careful working around it." He said that he had discussions with Salvati to "stay away from the fan and be careful working around the fan." In addition, the enclosed area was small and had very little light. When construction commenced, light from the shop floor sufficed for Salvati and his crew, but as the room was enclosed, the only available light came through louvres that opened when the fan operated. Salvati told Anthony-Lee that the room needed lighting and learned that Anthony-Lee had hired an electrician to install a light.

{¶7} Salvati's crew finished the job without incident. A few days later, Salvati was at Anthony-Lee's to discuss a different project. On his own initiative, he decided to inspect the finished work on the enclosure. He entered the compressor room and found it "awful hot." Thinking that "something wasn't working right," he reached out to check the compressor. "I looked at the fan and for some I reason I didn't think it was working so I put my hand close to the fan to see if it was sucking air out. The next thing I know, my hand was chopped up." Various Anthony-Lee employees heard Salvati's cry of pain and came to his assistance. One of the employees said that Salvati told them "[t]hat was stupid" and "I can't believe I did that." Another Anthony-Lee employee said that Salvati told her, "I don't know why I did it."

{¶8} The evidence leaves no question that Salvati knew and appreciated the risk associated with the unguarded fan.   He did not dispute that he and his employees knew about the danger the fan posed to them and the uncontested evidence showed that the danger the fan posed caused them to be especially careful around it.   Salvati, as an independent contractor, was charged with notice that the unguarded fan posed a safety hazard, so Anthony-Lee had no duty to warn him of what was open and obvious.

{¶9} We reach a similar conclusion with Salvati's argument that the enclosed room lacked lighting.   The enclosed room did not have lighting, and the evidence conflicted on whether Salvati and his crew needed to rig their own lighting in order to do the work: Salvati said that they used portable lighting; one of the members of work crew said they did not use lighting. The conflict is immaterial to the broader point that the room was dark and Salvati nevertheless put his hand into an unguarded fan to see if it was running.   This is not a case where darkness veiled dangers unknown to Salvati — he was aware of the dangers posed by the unguarded fan but nevertheless put his hand into the fan.

{¶10} Salvati argued that the court should apply an exception to the independent contractor rule used in cases where the owner of the premises actively participates in the work of the independent contractor by directing or exercising control over the independent contractor's work activities or exercises control over a critical variable in the work area. *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St.3d 206, 206, 452 N.E.2d 326 (1983), syllabus. *Hirschbach* does not apply because the uncontested facts show that Salvati had finished construction and there was nothing for Anthony-Lee to control with respect to Salvati's work activities. By his own admission, Salvati was on the premises for a different purpose and took it upon himself to inspect the newly enclosed room. In any event, the facts show that Anthony-Lee did not exercise control over the manner in which Salvati performed his construction services. The best that Salvati can offer is that Anthony-Lee personnel periodically stopped by to check on his progress; that is not the kind of active participation and control over the means and manner with which Salvati performed his work that would bring *Hirschbach* into play. *See Cafferkey v. Turner Constr. Co.*, 21 Ohio St.3d 110, 113, 488 N.E.2d 189 (1986); *Michaels,* 72 Ohio St.3d at 479, 650 N.E.2d 1352.

{¶11} Salvati also argued that Anthony-Lee violated state safety rules and regulations by maintaining a fan that had no safety guard. Violations of state regulations do not constitute negligence per se. *Hernandez v. Martin Chevrolet, Inc*., 72 Ohio St.3d 302, 302, 649 N.E.2d 1215 (1995), syllabus. The standard of care we previously cited applies — Anthony-Lee had the duty to warn Salvati of dangers that it had knowledge of and about which Salvati did not know. As Salvati admittedly knew the dangers posed by the unguarded fan, he had the same knowledge that Anthony-Lee had. The court did not err by granting summary judgment.

{¶12} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR