## Gilday v. S&R Playhouse Realty Co.
*[Cite as 4 AOA 267]*

Case No. 57022
Cuyahoga County, (8th)
Decided June 14, 1990

*David L. Levine, W. Craig Bashein, Attorneys at Law, 1200 Illuminating Building, 55 Public Square, Cleveland, Ohio, for Plaintiff-Appellants.*

*William H. Wallace, Douglas N. Barr, Attorneys at Law, 1100 National City Bank Building, Cleveland, Ohio 44114, for Defendant-Appellee, Turner Construction Co.*

*Mario Ciano, Attorney at Law, 113 St. Clair Building, Cleveland, Ohio 44114, for Defendant-Appellee, Boyas Excavating, Inc.,*

*Curtis Scott, Jr., Attorney at Law, 14650 Detroit Avenue, Lakewood, Ohio 44107, for Defendant-Appellee, S & R Playhouse Realty Company.*

SWEENEY, J.

Plaintiff-appellant Michael Gilday ("Gilday") appeals from the granting of the motion for summary judgment of defendant-appellee Turner Construction Company ("Turner"). For the reasons adduced below, we affirm the trial court's decision.

The record reveals that Turner was the general contractor involved in the renovation of the Halle Building in downtown Cleveland. Boyas Excavating, Inc. ("Boyas"), a demolition subcontractor on the project, employed Gilday as a general foreman.

On December 27, 1984, Gilday was working in the basement of the Halle Building. At the time, Gilday and his crew of laborers were involved in removing the suspended plaster ceiling from the basement area. Approximately one-half of that dropped ceiling had been removed. The remaining half had been cut free from the walls and support columns. This remaining portion was supported by a number of metal rods, which were implanted into the four-inch-thick plaster ceiling and suspended from the concrete ceiling above it.

As a result of the pushing of a backhoe's bucket against the exposed edge of the remaining ceiling, the entire ceiling shifted and cracked and fell to the floor below. Gilday was caught beneath the rubble, sustaining injuries to his person. Another workman, J. C. Holley, was crushed to death by the ceiling.[1]

On September 15, 1988, Turner moved for summary judgment after having obtained leave of court. Supporting this motion were excerpts from the deposition of: Frank Ilacqua (Boyas's assigned project superintendent); Michael Boyas (project superintendent after Ilacqua), and Gilday.[2]

On November 4, 1988, Gilday filed his brief in opposition to Turner's motion. Supporting the Gilday brief were the following: "affidavit of Gilday; affidavit of David Levine, an attorney for Gilday; a copy of the contract between Turner and Boyas; a copy of a letter dated June 10, 1985 from Boyas to Turner outlining the removal procedures of the roof-top water tank; a copy of a citation by the U.S. Dept. of labor (OSHA) issued to Boyas; a copy of the entry granting Turner's motion for summary judgment in *Holley*; and excerpts from the deposition of Frank Ilacqua."

On November 18, 1988, Turner filed a reply brief to Gilday's brief in opposition. Attached to this reply brief were excerpts from the depositions of Gilday and Michael Boyas.

On November 22, 1988, Turner supplemented its reply brief with additional case law.

The court granted Turner's motions for summary judgment on December 20, 1988. On December 30, 1988, Gilday filed a stipulated dismissal without prejudice on his claims against defendants Boyas and S & R Playhouse. On that same date, the defendants filed a stipulated dismissal without prejudice on any and all crossclaims, thereby rendering a final, appealable order.

The sole assignment of error presented by Gilday is whether the trial court erred in granting Turner's motion for summary judgment.

Civ. R. 56(C), relative to summary judgment, provides in pertinent part:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is not genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

Appellant, under the sole assignment of error, states two distinct issues:

"I. Whether Defendant-Appellee, Turner, was entitled to Summary Judgment under the Ohio Frequenter Statute, when there was evidence that they 'actively participated' in the demolition process and, therefore, owed plaintiff-appellant, Michael Gilday, a statutory duty to provide a safe place of employment.

"II. Whether Defendant-Appellee, Turner, was entitled to Summary Judgment when there were genuine issued of material fact regarding Turner's negligence as a general contractor in failing to perform or require adequate testing prior to commencement of the demolition process." Appellant's brief, p. iv.

As part of our review, we will address each issue separately in the order provided by appellant.

I.

Generally, the general contractor owes no duty to an employee of an independent subcontractor for injuries which result from risks inherent in that subcontractor's work. *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103.

The general rule was modified in *Hirschbach* v. *Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206, as follows:

"One who engages the services of an independent contractor, and who *actually participates* in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." Syllabus (emphasis added).

Since *Hirschback, supra,* was announced, the supreme court has seen fit to narrow the general rule further. In *Cafferkey* v. *Turner Construction Co.* (1986), 21 Ohio St. 3d 110, the court stated:

"A general contractor who has *not actively participated* in the subcontractor's work, does not, merely *by virtue of its supervisory capacity*, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." Syllabus (emphasis added).

The critical issue in the instant case is whether Turner actually of actively participated in the job operation of Boyas's inherently dangerous work.

Appellant argues that Turner actively participated in Boyas's work at the job site and is thus liable for the injuries suffered by Gilday. In support of this theory, appellant notes that the contract between Turner and Boyas provides that:

"(1) Turner had the right to review the details and construction of the work (Contract, Article 7); and

"(2) The work was to be performed and furnished under the direction and to the satisfaction of both the Architect and Turner (Contract, Article 8)."

As further evidence of Turner's active participation, appellant references to the deposition of Frank Ilacqua, where the deponent testified to the following:

"(1) Turner personnel, Gil Chase, would ask how Boyas was going to perform the work. (Ilacqua deposition, pp. 143-44) Appellant's brief, p. 11);

"(2) Turner would periodically ask for written job procedures from Boyas, which Turner could approved or change. (Ilacqua deposition, pp. 144-45) (Appellant's brief, p. 12);

"(3) Gil Chase was Boyas's boss on the site, and he had the right to refuse anything Boyas proposed to do. (Ilacqua deposition, pp. 39-40, 43-44) (Appellant's brief, pp. 12-13);

"(4) Gill Chase was a knowledgeable man and an attentive superintendent. (Ilacqua deposition, pp. 43-44) (Appellant's brief, pp. 12-13)."

Appellant also references his affidavit where he stated that Gil Chase, as Turner's superintendent, instructed Boyas to hand cut the ceiling around each column when freeing them so as not to damage the columns when the ceiling was torn down.

Turner's retention of the right to monitor and coordinate the activities of its subcontractor in order to ensure compliance with the overall specifications of the architect is a function of its supervisory capacity. Turner's exercise of its supervisory capacity, without more, does not amount to active participation in Boyas's work. *Cafferkey, supra,* at 113.

The contract between Turner and Boyas is clear:

"ARTICLE I. The Subcontractor shall perform and furnish all the work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and all other things necessary for Building Demolition and Asbestos Insulation Removal. * * *"

As was the case in *Cafferkey,* the various contractual rights reserved by Turner herein did not give Turner the power to control the means or manner of Boyas's performance. Evidence and testimony suggest that the decision as to how to remove the ceiling, and the actual removal of the ceiling, was made by non-Turner personnel. See, Ilacqua deposition, p. 148 (Appellee's brief, p. 17); Gilday deposition, p. 200 (Appellee's brief, pp. 22-23); and Mike Boyas's deposition, pp. 106-107 (Appellee's brief, pp. 24-25).

Yet, there remains Gilday's testimony from his affidavit that Gil Chase of Turner instructed Boyas to hand cut the ceiling around each column. This statement is at odds with his deposition testimony. Such an attempt to manufacture an issue of fact cannot be characterized as genuine. See, *Perma Research and Development Co.* v. *Singer Co.* (2nd Cir. 1969), 410 F.2d 572; and *Radobenko* v. *Automated Egpt. Corp.* (9th Cir. 1975), 520 F.2d 540. We conclude that Turner did not actively participate in the demolition of the ceiling. Judgment of the trial court is affirmed.

II.

In this issue, Gilday argues that Turner had a duty to (1) perform engineering studies on the ceiling prior to demolition as required by OSHA or (2) if it did not have such a duty, Turner had a duty to ensure that Boyas complied with the OSHA requirements for obtaining a pre-demolition ceiling engineering study. We find both of these arguments to be meritless.

The OSHA standard relied upon by Gilday provides:

"Prior to permitting employees to start demolition operations, an engineering survey shall be made, by a competent person, of the structure to determine the condition of the framing, floors, and walls, and possibility of unplanned collapse of any portion of the structure. Any adjacent structure where employees may be exposed shall also be similarly checked. *The employer shall have in writing evidence that such a survey has been performed."* 29 CFR 1926.850(a). (Emphasis added).

It is clear that the required engineering survey was not reduced to writing.

Reviewing the OSHA standard at issue, we find that Gilday is mistaken in his belief that Turner had the duty to perform the survey. The standard speaks in terms of employer and employee. Gilday was employed by Boyas; therefore, it was Boyas who should have performed the survey, not Turner.

Appellant next relies on contract language for his belief that Turner had a duty to ensure that Boyas complied with OSHA requirements. The contract, at Article XXII, entitled "Accident Prevention," provides:

"ARTICLE XXII. The Subcontractor agrees that the prevention of accidents to workmen engaged upon or in the vicinity of the Work is its responsibility. *The Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety as shall be applicable to the Work, including, among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued thereunder,* and with the safety standards established during the progress of the Work by Turner. When so ordered, the Subcontractor shall stop any part of the Work which Turner deems unsafe until corrective measures satisfactory to Turner have been taken, and the Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. Should the Subcontractor neglect to take such corrective measures, Turner may do so at the cost and expense of the Subcontractor and may deduct the cost thereof from any payments due or to become due to the Subcontractor. Failure on the part of Turner to stop unsafe practices shall in no way relieve the Subcontractor of its responsibility therefor." (Emphasis added).

There is nothing in the language of Article XXII which requires Turner to assure Boyas's compliance with OSHA. Rather, Boyas agreed to comply with the required safety standards. Additional contract language supports the view that Boyas, not Turner, was responsible for complying with applicable law. Article I, which was previously cited herein, states that, "The Subcontractor shall perform and furnish all . . . services . . . and all other things necessary for Building Demolition . . .." Paragraph 14 of the Additional Provisions section of the contract provides in pertinent part:

"The Work of this Agreement shall include, but not be limited to, all materials, labor, tools, equipment, engineering, layout work, scaffolding, supplies, plant, freight, superintendence, transportation, temporary construction where required, compliance with all agencies (City, County, State and Federal as may be required), contributions, insurance, all taxes of any kind (including Ohio State sales and use tax), all other services, facilities and things necessary for the building demolition * * *."

Obtaining an engineering survey of the ceiling is encompassed within the language of Article I and the Additional Provision paragraph cited. Further, Article XIV, entitled "Compliance with Law and Permits," provides:

"ARTICLE XIV. The Subcontractor shall obtain and pay for all necessary permits and licenses pertaining to the Work and shall comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, standards, orders, notices and requirements, including, among others, those relating to safety, discrimination in employment, fair employment practices or equal employment opportunity, and with the requirements of the American Insurance Association, whether or not provided for by the Plans, Specifications, General Conditions or other Contract Documents, without additional charge or expense to Turner, and shall also be responsible for and correct, at its own cost and expense, any violations thereof resulting from or in connection with the performance of its Work. The Subcontractor shall at any time upon demand furnish such proof as Turner may require showing such compliance and the correction of such violations. The subcontractor agrees to save harmless and indemnify Turner from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, costs and expenses, including legal fees and disbursements, caused or occasioned directly or indirectly by the

Subcontractor's failure to comply with any of said laws, ordinances, rules, regulations, standards, orders, notices or requirements or to correct such violations."

We find that Turner had no duty to ensure that Boyas comply with the OSHA requirement.

*Judgment affirmed.*

KRUPANSKY, P.J., and HOFSTETTER, J., concur.

Edwin T. Hofstetter, retired Judge of the Eleventh Appellate District, sitting by assignment.

---

[1] The death of J. C. Holley was the subject of Cuyahoga County Common Pleas Case No. 99750, entitled Edwina Holley v. S Holley on May 25, 1988. See Court Journal, Vol. 1050, p. 648.

[2] These depositions were filed with the court on September 15, 1988. The only complete deposition transcript in the record provided is that of Gilday.