OPINION
The present appeal emanates out of the decision by the Jefferson County Court of Common Pleas granting a motion for directed verdict at the close of the plaintiff's case in chief. For the reasons set forth below, the decision of the trial court is reversed and this matter is remanded.
 I. FACTS
The case at bar arises out of events which transpired on July 20, 1993. At that time, David G. Paul, ("appellant" herein), was employed by Eagle Erecting, Inc. (hereinafter "Eagle") as an ironworker. Eagle had been hired as a subcontractor by Grae-Con Construction, Inc. ("appellee" herein), the general contractor. It was Eagle's job to perform certain ironwork activities as related to the placing of a roof on an Aldi's store in Steubenville, Ohio. Eagle's work began on the project after appellee had erected the perimeter walls of the building. Once appellee had completed its duties, Eagle proceeded to put bar joists in place which ran from a center wall in the building to the perimeter walls. While these bar joists were welded to the perimeter wall by Eagle employees, all of the joists had not been connected to the center wall. Eagle then loaded decking and other materials on the bar joists. As appellant was up on one of the bar joists working, the perimeter wall shifted outward causing the bar joist appellant was working on to slip off of the center wall and fall to the ground. Appellant also fell some seventeen feet to the ground thereby sustaining various injuries.
As a result of appellant's fall and subsequent injuries, a complaint was filed in the Jefferson County Court of Common Pleas against appellee. Appellant alleged in his complaint that appellee's negligence had caused him to suffer bodily injury. Additionally, appellant's spouse and children raised loss of consortium claims due to the injuries and disability which appellant had suffered. Following the completion of discovery by both parties, appellee filed a motion for summary judgment. Appellant responded with a motion in opposition to summary judgment on October 6, 1995. Attached to appellant's motion in opposition was the affidavit of Ronald Faniro, a licensed architect. On October 10, 1995, appellee filed a reply brief that included a motion to strike Faniro's affidavit on grounds that it only provided legal conclusions. Upon a review of the motions, the trial court chose to strike the affidavit and granted appellee's motion for summary judgment.
Following the trial court's decision, appellant filed a notice of appeal with this court on October 26, 1995. On appeal, this court determined that summary judgment had been improperly granted and remanded the case for further proceedings. Paul v.Grae-Con Construction, Inc. (Sept. 12, 1996), Jefferson App. No. 95-JE-34, unreported. Having concluded all pre-trial matters following remand, this case proceeded to a trial by jury on August 5, 1997. At the close of appellant's case in chief, appellee moved for and was granted a directed verdict on the grounds that appellant had failed to provide sufficient evidence that appellee had actively participated in the events which lead to the injuries in question. Appellant filed a timely notice of appeal from the trial court's decision on August 19, 1997.
 II. ASSIGNMENT OF ERROR
Appellant raises a single assignment of error on appeal which reads:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR DIRECTED VERDICT WHEN AN ISSUE EXISTED UPON WHICH REASONABLE MINDS WOULD HAVE REACHED DIFFERENT CONCLUSIONS."
Appellant asserts that sufficient evidence was produced at trial to establish that appellee had actively participated in the events which resulted in his injuries. Particularly, appellant indicates it was appellee that was responsible for erecting the perimeter walls. In doing so, appellee had failed to brace the outside of the perimeter walls. It is the failure to properly brace the wall which appellant argues proximately caused the collapse of the bar joists. Had appellee not been negligent in its duties, the wall would not have shifted outward and appellant would not have sustained any injuries. Since testimony was presented regarding appellee's work on the project and the resulting collapse of the perimeter wall, appellant argues that a directed verdict should have been denied and the matter should have proceeded for a final determination by the jury.
Appellee responds to this position by arguing that it was Eagle's actions which lead to the fall of the bar joists. It is asserted that appellee played no role in instructing Eagle how to do the ironwork on the building. Similarly, appellee did not instruct Eagle to load decking onto the unconnected bar joists which is argued to have caused the collapse rather than the lack of exterior bracing. In that it is Eagle's actions which are perceived to have caused the falling of the bar joists, appellee contends that appellant was unable to establish any active participation by appellee in the events leading up to the collapse.
A. STANDARD OF REVIEW
The standard for appellate review on a motion for directed verdict is de novo; that is to construe the evidence presented most strongly in favor of the nonmoving party and, after so doing, determine whether reasonable minds could only reach a conclusion which is against the nonmoving party. Titanium Industries v.S.E.A., Inc. (Jan. 29, 1997), Mahoning App. No. 94-CA-130, unreported. Motions for directed verdicts are provided for in Civ.R. 50(A)(4) which states:
 "When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
It is well established that a court must neither consider the weight of the evidence nor the credibility of the witnesses when disposing of a directed verdict motion. Texler v. D.O. SummersCleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 679 citingStrother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285. A court is to assume the truth of the evidence which supports the essential facts of the nonmoving party's claim and give the nonmoving party the benefit of all reasonable inferences of the evidence. U.S. Fidelity Guaranty Co. v. Inter-City ProductsCorp. (Aug. 14, 1998), Columbiana App. No. 95-CO-75, unreported at 3 citing Becker v. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202,206. Where there is evidence from which reasonable minds could come to different conclusions, a directed verdict is inappropriate. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 327.
Despite the necessity to review and consider the evidence, a motion for directed verdict does not present factual issues but rather raises a question of law. Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 119. What is being tested with a motion for directed verdict is the legal sufficiency of the evidence to take the case to a jury. Wagner, supra. A court is called upon to determine whether any evidence of substantial probative value is of record to support the nonmoving party's claims. Id.
 B. APPLICABLE LAW
Although the primary responsibility for protecting employees lies with the employer, i.e., the subcontractor, instances may arise whereby the general contractor on a project will be held to be liable. Eicher v. United States Steel Corp. (1987), 32 Ohio St.3d 248,250. As the Ohio Supreme Court explained in Hirschbachv. Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206, "[o]ne who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." Id. at 208. Whether a general contractor has participated to the extent necessary for liability to attach depends on whether or not it directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury. Bond v. Howard Corp.
(1995), 72 Ohio St.3d 332, 337. As can be seen from this explanation, the focus of a court's analysis must be on active participation as the mere exercise of a general supervisory role over the construction project is not sufficient to give rise to liability. Cafferkey v. Turner Constr. Co. (1986), 21 Ohio St.3d 110,113.
The Ohio Supreme Court recently analyzed and applied its prior decisions on this issue in its decision in Sopkovich v. OhioEdison Co. (1998), 81 Ohio St.3d 628. In Sopkovich, Ohio Edison hired an independent contractor to paint one of its substations. It was undisputed that Ohio Edison did not participate in any manner as related to the painting of the substation. On the contrary, the subcontractor was responsible for directing and controlling the actual work activities and was the sole authority on granting or denying permission as to various aspects of the project. At most, Ohio Edison performed general supervisory duties to assure the project was completed as desired. While not involved in the painting activities, Ohio Edison was responsible for the deactivation of certain areas of the substation in which employees of the painting subcontractor were working. While painting in one of the areas which was to be deactivated, an employee of the subcontractor came into contact with high voltage electricity thereby sustaining severe injuries. An action was subsequently brought against the property owner, Ohio Edison.
Under these circumstances and in light of Ohio Supreme Court precedent in this area, it would appear that Ohio Edison was not liable as it did not participate in the painting work of the subcontractor. However, the court still found Ohio Edison to be liable as it retained and exercised control over a critical aspect of the work environment, i.e., the deactivation of specific electrical conductors in the work area. Id. at 643. In that it was this activity which resulted in the employee's injuries, the court held that a property owner could still be liable despite its failure to participate in the business of the subcontractor. Id.
It should be noted that the Ohio Supreme Court has previously held that the same legal test may be used for general contractors as for property owners when determining whether the entity owes a duty. Michaels v. Ford Motor Co. (1995), 72 Ohio St.3d 475, 478.
 C. ANALYSIS
Based upon a review of the record and the evidence presented to the trial court and construing such most strongly in favor of appellant, this court concludes that sufficient evidence was provided so as to permit reasonable minds to arrive at different conclusions on the issue of liability. Therefore, the trial court was in error in granting appellee's motion for directed verdict.
Through the presentation of witness testimony, appellant established that appellee did not merely play the role of a general supervisor during the course of constructing the Aldi's building. On the contrary, appellee took the responsibility upon itself to erect and brace the perimeter walls of the building. After having done so, appellee then contracted with appellant's employer to perform the necessary work to put a roof on the building. Having chosen to erect the perimeter walls of the building, appellee was responsible for completing this task in a manner so as not to put others in jeopardy.
Appellant's expert witness, Ronald Faniro, provided testimony which when assumed as true and construed in appellant's favor could lead reasonable minds to the conclusion that appellee's actions contributed to appellant's injuries. According to Faniro, the bracing of a perimeter wall is necessary during the course of construction in order to stabilize it and assist in the resistance of horizontal forces upon the structure. It was viewed by Faniro as a customary practice to provide bracing on both the interior and exterior sides of the wall until a structure became a "unified element," that is the building was connected in all aspects. By only bracing the interior portion of the wall, Faniro opined that appellee's conduct was a proximate cause of the building's collapse. Had the bracing been properly performed, the chances of collapse would have been "greatly diminished." Faniro continued by stating that exterior bracing would have solved the problem which resulted in appellant's injuries. Essentially, it was his opinion that appellee had not properly finished its portion of the project.
Appellant provides additional testimony on appellee's involvement in the project. In appellant's opinion, the wall which ultimately collapsed was not plumb. Furthermore, in his opinion it was appellee's job to assure that such was done. This factor in conjunction with the testimony provided by Faniro assists in establishing that appellee's actions were at least in part responsible for the incident in question.
In comparing this situation to that present in Sopkovich, it is clear that appellee did not actively participate in the business of the subcontractor. Just as Ohio Edison played no role in the painting activities, appellee did not participate in the subcontractor's work involving the iron work. However, what appellee did do in the case sub judice was participate in the events which resulted in appellant's injuries. As testified to by appellant and Faniro, it was appellee's duty to make sure that the work on the perimeter walls was properly completed. Essentially, appellee retained and exercised control over this portion of the project. In that the perimeter walls play a crucial role in the ability of the subcontractor to perform the ironwork, appellee's actions must be viewed as being a critical aspect of appellant's work environment. Hence, despite appellee's lack of participation in the ironwork, its active participation in this vital portion of the overall project is sufficient to attach liability. Id. at 643.
Appellee attempts to persuade this court to adopt the position that the actions of the subcontractor resulted in appellant's injuries rather than its own failure to properly brace the perimeter wall. In support of this argument, appellee points to portions of the record which indicate that the subcontractor's failure to properly secure the bar joists to the center wall in conjunction with prematurely loading the decking on the bar joists caused the structure to collapse. However, upon closer review these factors can at best be considered contributing causes of appellant's injuries.
Faniro does in fact testify that the bar joists had not been properly connected to the center wall as is called for by industry standards. Additionally, he stated that the loading of the decking onto the bar joists played a role in the collapse of the perimeter wall. However, Faniro qualified these statements when he indicated that the bar joists still could have fallen even if they had been properly secured to the center wall. For instance, it was determined to be a possibility that the bolts which would have connected the bar joists to the center wall could have sheered off thus causing the structure to collapse. Faniro also indicated that connecting the bar joists to the center wall would not have completely eliminated the risk of a collapse due to the fact that the perimeter wall did not have exterior bracing. While these two factors were admitted to be contributing causes to the accident, Faniro maintained his opinion that the failure to properly brace the perimeter wall was a proximate cause of the buildings collapse.
It has long been recognized that the result complained of in a negligence suit may stem from multiple causes. American StatesIns. Co. v. Caputo (1998), 126 Ohio App.3d 401, 407 citing Taylorv. Webster (1967), 12 Ohio St.2d 53. When a single injury is caused by two or more factors joining together, both factors will be considered the proximate cause. Berdyck v. Shinde (1993),66 Ohio St.3d 573, 584. So long as the original act of negligence continues to the time of the injury and contributes substantially to the harm caused, liability may still be imposed. Id. Assuming the truth of the evidence and construing it in favor of appellant leads this court to the conclusion that although the factors enumerated by appellee may have contributed to the injuries at issue, they do not preclude appellant from seeking recovery. In that appellant has provided evidence which would indicate that appellee's activities were at least a proximate cause of the building's collapse, such was sufficient to avoid a motion for directed verdict and send the case to a jury for consideration.
This court should note that while it is aware of a number of unreported cases cited by appellee in an attempt to establish that liability should not attach to its actions, all such. cases are clearly distinguishable. Amongst the cases cited by appellee are two cases from this district. In this court's recent decision inAbbott v. Jarrett Reclamation Services, Inc. (Mar. 15, 1999), Belmont App. No. 96-BA-36, unreported, we had the opportunity to review and apply the case law outlined above as to when a general contractor may be held liable for injuries to a subcontractor's employees. In that case, this court concluded that the general contractor was not liable for the death of a subcontractor's employee which occurred when a ditch in which the employee was working collapsed. However, in Abbott the general contractor did not participate in any way as related to the digging of the trench. Likewise, no actions by the general contractor could have been construed as contributing to the collapse of the trench. As such, the facts in Abbott did not present this court with circumstances analogous to those in the case at bar.
Similarly inapplicable is the case of Jacobs v. ButlerManufacturing Co. (Sept. 26, 1990), Mahoning App. No. 89-CA-45, unreported. In Jacobs, a subcontractor was responsible for placing roofing panels on a prefabricated metal building. In the course of completing this work, one of the panels buckled under the weight of one of the subcontractor's employees causing him to fall to the ground and sustain injuries. The injured employee attempted to recover from the general contractor for the injuries sustained in the fall. However, this court determined that the general contractor "did not participate in the job at all" and thus could not be held liable. Id. at 3. The collapse of the roofing panel did not occur due to any fault on behalf of the general contractor. As explained herein, the situation presented in the case sub judice establishes that appellee played an active role in a portion of the project which at least in part lead to appellant's injuries.
The same circumstances are presented in Reid v. EspritContractors. Inc. (Mar. 5, 1997), Summit App. No. 17870, unreported. In Reid, the Ninth District Court of Appeals determined that the general contractor could not be held liable as it "merely supervised the job site." Id. at 3. Based uponCafferkey, supra, supervision of the job site alone is insufficient to hold a general contractor liable.
In light of our opinion herein, it was improper for the trial court to grant appellee's motion for directed verdict. Sufficient evidence was contained in the record at the conclusion of appellant's case in chief which would permit reasonable minds to conclude that appellee's actions were a proximate cause of appellant's injuries. Therefore, appellant's assignment of error has merit.
For the foregoing reasons, the decision of the trial court is reversed and this cause is remanded to the trial court for further proceedings consistent with this court's opinion and according to law.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 ___________________________________ JOSEPH J. VUKOVICH, JUDGE