OPINION
{¶ 1} Plaintiff-appellant, Lisa McClary, appeals from a judgment of the Franklin County Court of Common Pleas that granted summary judgment in favor of defendantsappellees, M/I Schottenstein Homes, Inc. ("M/I"), Contract Lumber, Inc. ("Contract Lumber"), and Contract Framing, Inc. ("Contract Framing"). For the following reasons, we affirm.
 {¶ 2} M/I was the owner, developer, and builder of Woodside Meadows, a residential development in Gahanna, Ohio. For this project, M/I contracted with Contract Framing to provide construction services at the Woodside Meadows site. Contract Framing subcontracted with J.M. Construction[1] to perform the framing of a structure at Woodside Meadows.
 {¶ 3} In July 1999, Alan L. McClary ("decedent"), an employee of J.M. Construction and a cousin of the owner, was framing the structure at Woodside Meadows when he fell two stories through an open stairwell to the concrete floor of the basement. Decedent later died as a result of injuries that he sustained.
 {¶ 4} On July 27, 2001, plaintiff, individually and as administrator of the estate of decedent and as guardian and next friend of decedent's minor children, sued M/I, Contract Lumber, Contract Lumber South, Inc. ("Contract Lumber South")[2]
and James McClary, owner of J.M. Construction. In this complaint, plaintiff asserted six causes of action: (1) employer tort in which plaintiff alleged, among other things, that J.M. Construction failed to protect decedent from an allegedly dangerous condition; (2) common law negligence in which plaintiff alleged, among other things, that M/I, Contract Lumber, and Contract Lumber South negligently failed to provide a cover for the open stairwell and, alternatively, that M/I, Contract Lumber and Contract Lumber South's failure to warn of the alleged hazard constituted wanton and willful acts; (3) violations of regulations wherein plaintiff alleged, among other things, that M/I, Contract Lumber, and Contract Lumber South violated Sections 1926.501 and 1926.502, Title 29, C.F.R. and former Ohio Adm. Code4121:1-3-04 by failing to cover the open stairwell and, alternatively, that these alleged violations constituted wanton and willful acts; (4) violations of R.C. 4101.11 and 4101.12 by defendants, thereby creating an unsafe place for employees and frequenters; (5) loss of consortium by plaintiff and decedent's minor children; and (6) wrongful death of decedent due to defendants' alleged tortious acts.
 {¶ 5} With court approval, M/I filed a cross-claim against all co-defendants. In this cross-claim, M/I asserted two causes of action: indemnification from Contract Lumber and contribution from all co-defendants. According to M/I, Contract Lumber violated safety obligations as contained in its contract with M/I and, therefore, M/I was entitled to complete and full indemnification. Additionally, M/I contended that, assuming plaintiff proved the validity of her claims, her damages resulted, in whole or in part, from the negligence of M/I's co-defendants, thereby entitling M/I to contribution from all its codefendants.
 {¶ 6} On September 3, 2002, M/I moved for summary judgment, wherein it argued that: (1) it owed no duty to decedent who was an employee of an independent contractor; (2) assuming arguendo that M/I owed a duty to decedent, M/I was not responsible for compliance with Occupational Safety and Health Administration ("OSHA") regulations; and (3) assuming arguendo that M/I owed a duty to decedent, M/I was not negligent because decedent's medical condition, i.e., diabetes, caused the incident that resulted in his death.
 {¶ 7} Three days later, Contract Lumber and Contract Framing jointly moved for summary judgment, wherein these parties argued, among other things, that: (1) they did not violate a common law duty of care toward decedent; (2) they did not violate any applicable OSHA regulations and, even if they had, such violations did not constitute negligence or willful and wanton conduct; and (3) they did not violate any applicable OSHA regulations and, even if they had, such violations did not constitute negligence.
 {¶ 8} Plaintiff opposed M/I's motion for summary judgment, as well as the motion for summary judgment of Contract Lumber and Contract Framing. In her memoranda in opposition, she argued that genuine issues of material fact precluded summary judgment as a matter of law, and attached an affidavit of an expert witness in support.
 {¶ 9} Subsequently, in separate motions, M/I and Contract Lumber and Contract Framing moved to strike plaintiff's expert's affidavit because plaintiff failed to timely disclose her expert witness, thereby prejudicing defendants. Plaintiff did not oppose defendants' motions to strike.
 {¶ 10} On June 13, 2003, the trial court issued a decision and entry wherein it: (1) granted defendants' motions to strike plaintiff's expert's affidavit; (2) granted M/I's motion for summary judgment; and (3) granted Contract Lumber and Contract Framing's motion for summary judgment.
 {¶ 11} One week later, in a joint entry and by agreement of the parties, defendants' motions to strike were withdrawn. Thereafter, on June 30, 2003, the trial court rendered a decision and entry wherein it granted M/I's motion for summary judgment and also granted Contract Lumber and Contract Framing's motion for summary judgment. On July 14, 2003, pursuant to Civ.R. 41(A)(1), plaintiff dismissed without prejudice defendant J.M. Construction.
 {¶ 12} Later, claiming that the trial court's entry of June 30, 2003, contained a clerical error, Contract Lumber and Contract Framing moved the trial court to correct this purported clerical error pursuant to Civ.R. 60(A). Based upon our review of the record, defendants' Civ.R. 60(A) motion remains outstanding.
 {¶ 13} From the trial court's entry of June 30, 2003, plaintiff appeals and assigns the following two assignments of error:
I. The lower court erred in granting defendant M/I Schottenstein Homes, Inc.'s motion for summary judgment, because material questions of fact exist with regard to its liability for the death of plaintiff's decedent, Alan McClary.
II. The lower court erred in granting defendants contract lumber and contract framing's motions for summary judgment, because material questions of fact exist with regard to their liability for the death of plaintiff's decedent, Alan McClary.
 {¶ 14} To begin, we sua sponte address whether the trial court's entry of June 30, 2003, is a final appealable order and whether this court properly has subject-matter jurisdiction of this cause.
 {¶ 15} An appellate court may sua sponte raise the issue of subject-matter jurisdiction. State ex rel. White v. CuyahogaMetro. Hous. Auth. (1997), 79 Ohio St.3d 543, 544. Furthermore, subject-matter jurisdiction may not be waived and neither may the parties to a case bestow subject-matter jurisdiction upon a court. Id. Absent a final appealable order, an appellate court has no jurisdiction to review the matter, General Acc. Ins. Co.v. Ins. Co. of N. Am. (1989), 44 Ohio St.3d 17, 20, and, as a consequence, the matter must be dismissed. Renner's Welding andFabrication, Inc. v. Chrysler Motor Corp. (1996),117 Ohio App.3d 61, 64; see, also, Mogavero v. Lombardo (Sept. 25, 2001), Franklin App. No. 01AP-98.
 {¶ 16} To determine whether a judgment is final, an appellate court must engage a two-step analysis. General Acc. Ins. Co.,
supra, at 21. First, an appellate court must determine whether the order is final pursuant to the requirements of R.C. 2505.02. If an appellate court determines that the order complies with R.C. 2505.02 and is final, then an appellate court must decide whether Civ.R. 54(B) language is required. Id.; see, also,Mogavero, supra.
 {¶ 17} Since plaintiff perfected this appeal, R.C. 2505.02
has been amended three times. See Am.Sub.H.B. No. 342, effective September 1, 2004; Am.Sub.H.B. No. 292, effective September 2, 2004; and Sub.S.B. No. 187, effective September 13, 2004 (collectively "the September 2004 amendments").
 {¶ 18} In Kilbreath v. Rudy (1968), 16 Ohio St.2d 70, the Supreme Court of Ohio held in paragraphs one and two of the syllabus:
1. Section 28, Article II of the Ohio Constitution prohibiting the passage of retroactive laws, has application to laws affecting substantive rights, and has no reference to laws of a remedial nature providing rules of practice, courses of procedure or methods of review.
2. Laws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws.
See, also, French v. Dwiggins (1984), 9 Ohio St.3d 32, 33-35.
 {¶ 19} Later, however, in Nease v. Medical College Hosp.
(1992), 64 Ohio St.3d 396, the Supreme Court stated:
The method of determining retrospectivity of a statute was set out in Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 522 N.E.2d 489. In Van Fossen, this court stated:
"The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution. (Kiser v.Coleman [1986], 28 Ohio St.3d 259, 262, 28 OBR 337, 339-340,503 N.E.2d 753, 756, approved and followed; Wilfong v. Batdorf
[1983], 6 Ohio St.3d 100, 6 OBR 162, 451 N.E.2d 1185; and Frenchv. Dwiggins [1984], 9 Ohio St.3d 32, 9 OBR 123, 458 N.E.2d 827, to the extent inconsistent herewith, modified.)" Id. at paragraph one of the syllabus.
There must be a clear indication by the General Assembly that a statute is intended to apply retrospectively and absent such indication only prospective application may be made. VanFossen, 36 Ohio St.3d at 106, 522 N.E.2d at 495. * * *
Id. at 398; see, also, State v. LaSalle, 96 Ohio St.3d 178,2002-Ohio-4009, at ¶ 14; Erie Cty. Drug Task Force v. Essian
(1992), 82 Ohio App.3d 27, 30, fn. 2.
 {¶ 20} Here, R.C. 2505.02(D), as amended by the September 2004 amendments, provides:
This section applies to and governs any action, including an appeal, that is pending in any court on July 22, 1998, and all claims filed or actions commenced on or after July 22, 1998, notwithstanding any provision of any prior statute or rule of law of this state.
 {¶ 21} Accordingly, construing R.C. 2505.02(D), we apply the current version of R.C. 2505.02, rather than former R.C. 2505.02
that was in effect when plaintiff perfected her appeal.
 {¶ 22} R.C. 2505.02(B) provides:
An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]
 {¶ 23} See, also, R.C. 2505.02(A)(1) (defining "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect");[3] HamiltonCty. Bd. of Mental Retardation and Developmental Disabilities v.Professionals Guild of Ohio (1989), 46 Ohio St.3d 147, 153
(stating that "[f]or an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court").
 {¶ 24} In the instant case, the trial court's entry of June 30, 2003, which lacked Civ.R. 54(B) language, did not dispose of M/I's cross-claim against all its co-defendants.
 {¶ 25} "[E]ven though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable." GeneralAcc. Ins. Co., supra, at 21. "[W]hen all claims and parties are adjudicated in an action, Civ.R. 54(B) language is not required to make the judgment final." Id. See, also, Wise v. Gursky
(1981), 66 Ohio St.2d 241, syllabus (holding that "[a] judgment for the defendant in a civil action, which judgment renders the defendant's third-party complaint for indemnification or contribution moot, is a final appealable order pursuant to R.C.2505.02, and Civ.R. 54[B] is not applicable to such a judgment").
 {¶ 26} Here, M/I's cross-claims for indemnification and contribution were conditioned upon a finding of liability on the part of M/I. By granting summary judgment in favor of M/I, the effect of the trial court's order rendered moot M/I's cross-claims.
 {¶ 27} Accordingly, (1) because the trial court found in favor of defendants M/I, and Contract Lumber and Contract Framing, (2) because the effect of the trial court's order rendered moot M/I's cross-claims, and (3) because plaintiff dismissed without prejudice defendant J.M. Construction from this action, we conclude that all claims and parties have been adjudged and, therefore, subject-matter jurisdiction of this cause is properly before this court. See Wise, supra.
 {¶ 28} Having established that subject-matter jurisdiction lies and that this cause is properly before this court, we consider the merits of plaintiff's appeal.
 {¶ 29} Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount PresbyterianChurch, 149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. "`Denovo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" Id., quoting Brewer v. Cleveland City Schools Bd. ofEdn. (1997), 122 Ohio App.3d 378, citing Dupler v. MansfieldJournal Co., Inc. (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111.
 {¶ 30} Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
 {¶ 31} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421,430; Civ.R. 56(E).
 {¶ 32} Plaintiff's first assignment of error asserts the trial court erred when it granted summary judgment in favor of M/I because genuine issues of material fact exist to preclude judgment. To support her argument, plaintiff relies uponSopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628.
 {¶ 33} In Sopkovich, Ohio Edison Company ("Ohio Edison") hired an independent painting contractor to paint an electric substation that Ohio Edison owned and operated. Although it was not feasible to shut off the entire flow of electricity through the substation during the period in which the painting was to occur, Ohio Edison was able to de-energize some conductors without interrupting service to its customers. Each day, before painting began, an employee of Ohio Edison would inform a representative of the independent contractor which conductors were energized and which were not. This representative of the independent contractor, in turn, would convey this information to the painters. At all relevant times, Ohio Edison retained exclusive control over which of the substation's electrical circuits would be de-energized. Also, at all relevant times, Ohio Edison retained exclusive control over the activation and deactivation of the electrical circuits.
 {¶ 34} During the painting of the substation, an employee of the independent painting contractor was injured after he received a massive electrical shock while he descended from the substation after completing an assigned task. This employee later sued Ohio Edison. The trial court granted summary judgment in favor of Ohio Edison. On appeal, the court of appeals found that the trial court correctly concluded that Ohio Edison had not directed or controlled the activities of the paint crew. However, the appellate court found that a genuine issue of material fact existed as to whether Ohio Edison had created a duty of care by retaining and exerting control over a critical aspect of the independent contractor's employee's working environment. Therefore, the appellate court reversed and remanded the matter to the trial court. See Lexie v. Ohio Edison Co. (Dec. 13, 1996), Trumbull App. No. 96-T-5384. Later, the matter was heard before the Supreme Court of Ohio after its determination that a conflict existed. See Lexie v. Ohio Edison Co. (1997),78 Ohio St.3d 1454.
 {¶ 35} After reviewing the court's prior decisions involving the duties and responsibilities owed by a party who engages the services of an independent contractor to perform an inherently dangerous task, Sopkovich, at 636-642, the Sopkovich court stated, at 643, that "active participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace." See, also, id. at 635.
 {¶ 36} Applying this standard, the Sopkovich court found that, while Ohio Edison did not direct or control the work activities of the painting contractor or the job activities of the individual painters, id. at 643, Ohio Edison did retain exclusive control over a critical variable, namely, the de-activation of specific electrical conductors in the work area. Id. Agreeing with the appellate court, the Sopkovich court found that a question remained as to whether Ohio Edison owed a duty of care to the injured painter stemming from its retention and exercise of control. Id. The Sopkovich court noted, however, that any duty that Ohio Edison may have owed to the injured painter was not absolute. Id. The Sopkovich court explained that "Ohio Edison's liability (if any) may only be predicated on a breach of a specific duty that Ohio Edison undertook to perform, i.e., the tasks of deelectrification and communication." Id. Accordingly, the Sopkovich court affirmed the judgment of the appellate court.
 {¶ 37} Applying Sopkovich to the instant case, the issues resolve to: (1) whether M/I, as the property owner, either directed or exercised control over the work activities of J.M. Construction's employees; or (2) whether M/I, as the property owner, retained or exercised control over a critical variable in the workplace.
 {¶ 38} Based upon this record, we find no evidence that M/I either granted or denied permission to any aspect of the job activities of the independent contractor. At most, M/I exercised a general supervisory role over construction to ensure that construction was properly completed.[4] Construing this evidence in a light most favorable to plaintiff, we find that M/I did not direct or exercise control over the work activities of J.M. Construction's employees.
 {¶ 39} However, Sopkovich also directs us to consider whether M/I, as the property owner, retained or exercised control over a critical variable in the workplace. See id. at 643. Here, the critical variable at issue is control over the open stairwell through which decedent fell.
 {¶ 40} According to the testimony of James McClary, M/I employed Steve Anderson, whose duties included performing sporadic safety audits and checking construction sites to determine whether these sites complied with OSHA regulations.[5] However, while Anderson's duties included the performance of sporadic safety audits, James McClary testified that Anderson made no safety audit of the particular jobsite where decedent was injured.[6] Furthermore, according to James McClary, prior to decedent's fall, the M/I field supervisor did not speak with him about the particular jobsite where decedent fell.[7]
 {¶ 41} In Sopkovich, the court observed that any duty that Ohio Edison may have owed to the injured painter was not absolute. Id. Similarly, here any duty that M/I may have owed to decedent was not absolute.
 {¶ 42} In this case, because M/I retained the right to perform safety audits, M/I conceivably may have retained some attenuated control over the construction site where decedent fell. However, according to the testimony of James McClary, no representative of M/I actually performed a safety audit of the work area where decedent was injured. Thus, M/I did not exercise control over a critical variable in the workplace and, by implication, it did not assume any obligation toward decedent.
 {¶ 43} Because M/I conceivably retained some attenuated control over the work area through safety audits but did not exercise control over a critical variable in the workplace, we conclude this case is factually distinguishable from Sopkovich
where Ohio Edison retained and exercised exclusive control over the de-activation of specific electrical conductors in the work area where the independent contractor's employee was injured. Id. at 643.
 {¶ 44} Furthermore, we cannot conclude that unauthenticated and uncertified copies of safety correspondence, which purportedly were between Steve Anderson and a production manager for M/I, and which plaintiff attached to her memoranda in opposition, create a genuine issue of material fact. See Civ.R. 56(E); State ex rel. Shumway v. State Teachers Retirement Bd.
(1996), 114 Ohio App.3d 280, 287-288; Buzzard v. Pub. Emp.Retirement Sys. of Ohio (2000), 139 Ohio App.3d 632, 636-637;Burton v. Triplett (Feb. 14, 2002), Franklin App. No. 01AP-357; see, also, Douglass v. Salem Community Hosp.,153 Ohio App.3d 350, 2003-Ohio-4006, at ¶ 24-25, appeal not allowed,100 Ohio St.3d 1530, 2003-Ohio-6458, reconsideration denied (2004),101 Ohio St.3d 1471, 2004-Ohio-819.
 {¶ 45} Accordingly, construing the evidence in plaintiff's favor, we cannot conclude that M/I undertook any duty toward decedent.
 {¶ 46} Finding that M/I did not assume a duty toward decedent, we find that plaintiff's common law negligence claim against M/I must fail, as well as her claim that M/I's failure to warn decedent of the open stairwell constituted wanton and willful misconduct. See McCoy v. Engle (1987),42 Ohio App.3d 204,207
(stating that "[a]bsent a duty to act reasonably toward the injured party, no negligence may be claimed"); Hunter v.Columbus (2000), 139 Ohio App.3d 962, 969, appeal not allowed (2001), 91 Ohio St.3d 1493 (observing that "wanton misconduct" is characterized by a failure to exercise any care toward a party to whom a duty of care is owed when the probability of harm is great and the tortfeasor knows of this probability of harm); id. at 969-970, citing Brockman v. Bell (1992), 78 Ohio App.3d 508
(stating that "`"willful" misconduct is "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury"'"); see, also, Gardner v. Ohio Valley Region, Sports Car Club of Am.,
Franklin App. No. 01AP-1280, 2002-Ohio-3556.
 {¶ 47} Because M/I failed to cover the open stairwell, plaintiff also alleged that it violated OSHA regulations as contained in Sections 1926.501 and 1926.502, Title 29, C.F.R., and Ohio safety requirements related to construction as contained in former Ohio Adm. Code 4121:1-3-04, thereby purportedly imputing liability to M/I. In Anderson v. Ruoff (1995),100 Ohio App.3d 601,605, appeal not allowed,73 Ohio St.3d 1414, this court observed that "OSHA standards relate only to employers and do not provide a private cause of action for third parties" see, also,Tomaselli v. Amser Corp. (July 20, 2000), Cuyahoga App. No. 76605; State ex rel. Goodyear Tire Rubber Co. v. Tracey
(1990), 66 Ohio App.3d 71, 76, cause dismissed,53 Ohio St.3d 712. See, also, Nielsen v. Ford Motor Co. (1996),113 Ohio App.3d 495, 500 (observing that "the Ohio Supreme Court has held that a `statutory policy' may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio General Assembly"); Doev. Adkins (1996), 110 Ohio App.3d 427, 435. Here, plaintiff has not directed us to any authority that establishes that a violation of Sections 1926.501 and 1926.502, Title 29, C.F.R., or former Ohio Adm. Code 4121:1-3-04 creates an independent cause of action.
 {¶ 48} However, even assuming that violations of these administrative regulations and rules create an independent cause of action, plaintiff's claim fails as a matter of law. Section 1926.501(a)(1), Title 29, C.F.R., provides that "[t]his section sets forth requirements for employers to provide fall protection systems. All fall protection required by this section shall conform to the criteria set forth in sec. 1926.502 of this subpart." (Emphasis added.) See, also, Section 1926.502(a)(2), Title 29, C.F.R. (providing that "[e] mployers shall provide and install all fall protection systems required by this subpart for an employee") (emphasis added); Section 1926.500, Title 29, C.F.R. ("employer" not defined in definitions applicable to this subpart).
 {¶ 49} "Employer" may be defined as "[a] person who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages." Black's Law Dictionary (8 Ed. 2004) 565. Here, it is undisputed that J.M. Construction, not M/I, was decedent's employer. Therefore, Sections 1926.501 and 1926.502, Title 29, C.F.R., on their face, do not apply to M/I. Even construing the evidence in plaintiff's favor, plaintiff's allegation that M/I violated Sections 1926.501 and 1926.502, Title 29, C.F.R., thereby resulting in liability on the part of M/I, is not well-taken.
 {¶ 50} Former Ohio Adm. Code 4121:1-3-04(A), which is now contained in Ohio Adm. Code 4123:1-3-04(A),[8] in relevant part, provided that "[t]his rule shall apply to temporary conditions where there is danger of employees or material falling through floor, roof or wall openings or from stairways or runways." (Emphasis added.) Additionally, former Ohio Adm. Code4121:1-3-01(A), which is now contained in Ohio Adm. Code4123:1-3-01(A),[9] in relevant part, provided: "This chapter covers construction activities of employees whoseemployer engages in such work as its principal business. It also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure." (Emphasis added.) See, also, O'Brien v. A.E.I., Inc. (Apr. 26, 1990), Cuyahoga App. No. 56822, at fn. 2 (observing that Ohio Adm. Code 4121:1-3-04[H] applies to employers). Accordingly, we conclude that the safety requirements of former Ohio Adm. Code4121:1-3-04 apply to employers.
 {¶ 51} M/I, however, was not decedent's employer. Therefore, on its face, former Ohio Adm. Code 4121:1-3-04 did not apply to M/I. Even assuming that former Ohio Adm. Code 4121:1-3-04 created an independent cause of action, and construing the evidence in plaintiff's favor, plaintiff's allegation of liability on the part of M/I for an alleged violation of former Ohio Adm. Code4121:1-3-04 is not well-taken.
 {¶ 52} Plaintiff also alleged that M/I violated R.C. 4101.11
and 4101.12.
 {¶ 53} R.C. 4101.11 provides:[10]
Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.
 {¶ 54} Additionally, "R.C. 4101.12 similarly imposes a duty upon an employer to provide employees and frequenters with a safe place of employment." Michaels v. Ford Motor Co. (1995),72 Ohio St.3d 475, 477. (Fn. omitted.)
 {¶ 55} According to R.C. 4101.12:
No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe.
 {¶ 56} In general, R.C. 4101.11 and 4101.12 "impose essentially the same duty of care upon an owner or occupier of property as that imposed at common law." Michaels, at 477, fn. 2; see, also, Eicher v. U.S. Steel Corp. (1987),32 Ohio St.3d 248, 249; Frost v. Dayton Power and Light Co. (2000),138 Ohio App.3d 182, 190, amended by Frost v. Dayton Power and Light Co.
(July 25, 2000), Adams App. No. 98 CA 669, appeal not allowed,90 Ohio St.3d 1452. Therefore, the issue resolves to what, if any, duty of care did M/I owe to decedent.
 {¶ 57} In Eicher, Thomas Eicher, an employee of an independent contractor that had been hired to perform construction at a steel plant, sued the steel plant, alleging that he had suffered a heart attack as a result of the steel plant's negligence and failure to provide a safe work place. At the close of Eicher's evidence, the trial court granted a defense motion for a directed verdict. An appellate court affirmed. In affirming the appellate court, the Eicher court held that "[t]he duty to frequenters of places of employment, set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor." Id. at syllabus. The Eicher court also noted that Eicher was an employee of the independent contractor and, therefore, under the independent contractor's direct control, which had primary responsibility for protecting one in Eicher's circumstances. Id. at 250.
 {¶ 58} A construction site is an inherently dangerous setting, Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, 336, and a subcontractor at a construction site is engaged in inherently dangerous work, Michaels, at 479, fn. 4. "[W]hen either the independent contractor or his employee is aware that real or potential dangers surround the performance of the task for which the independent contractor was hired, generally, no liability will attach to the owner or occupier of the premises."Frost, at 191. Moreover, constructive notice of a danger will suffice. Id.
 {¶ 59} Here, prior to his fall at the construction site, decedent had been employed in the construction field since he was approximately 16 years old[11] and had worked as a framer at that particular residential site for approximately three days.[12] Moreover, according to Tommy McClary, decedent's brother, during the eight-year period that he worked with decedent, he had observed decedent lose his balance approximately 15 to 20 times and observed him fall off a wall a "handful" of times.[13] Construing this evidence most strongly in plaintiff's favor, we conclude that reasonable minds could come to but one conclusion, namely that decedent had constructive notice of the hazards that were inherently present at the construction jobsite.
 {¶ 60} Accordingly, construing Eicher, assuming that decedent was a "frequenter" under R.C. 4101.11 and 4101.12, see, e.g., Frost, at 189, fn. 5, we conclude that M/I, as a matter of law, did not owe a duty of care to decedent.
 {¶ 61} Plaintiff has also alleged that she and decedent's minor children have suffered a loss of consortium for which M/I is liable.
 {¶ 62} Under Ohio law, "[a] wife has a cause of action for damages for the loss of consortium of her husband against a person who negligently injures her husband, which injuries deprive her of the consortium of her husband." Clouston v.Remlinger Oldsmobile Cadillac, Inc. (1970), 22 Ohio St.2d 65, paragraph two of the syllabus, overruling Smith v. NicholasBldg. Co. (1915), 93 Ohio St. 101. Similarly, Ohio law recognizes a minor child's cause of action for loss of parental consortium. Rolf v. Tri State Motor Transit Co. (2001),91 Ohio St.3d 380, 381, citing Gallimore v. Children's Hosp. Med. Ctr.
(1993), 67 Ohio St.3d 244, paragraph two of the syllabus.[14]
 {¶ 63} However, "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." Bowen v. Kil-Kare, Inc. (1992),63 Ohio St.3d 84, 93, rehearing denied, 63 Ohio St.3d 1442; see, also,Gallimore, at paragraph two of the syllabus (holding that "a minor child has a cause of action for loss of parental consortium against a third-party tortfeasor who negligently or intentionally causes physical injury to the child's parent"). Therefore, construing Bowen and Gallimore, absent a legally cognizable tort upon decedent, plaintiff's loss of consortium claims cannot lie.
 {¶ 64} As discussed above, we have already concluded that, under the facts and circumstances of this case, M/I, as a matter of law, owed no duty to decedent. Absent a legal duty, we find that a legally cognizable tort against M/I does not lie and, therefore, as a matter of law, plaintiff's loss of consortium claims fail.
 {¶ 65} In addition to loss of consortium, plaintiff also alleged that M/I was liable based upon a claim of wrongful death.
 {¶ 66} A wrongful death action is an independent cause of action, Thompson v. Wing (1994), 70 Ohio St.3d 176, 182, which is based in statute and operates as an exception to the common law rule that death terminates all claims for relief that otherwise may be brought. Monnin v. Fifth Third Bank of MiamiValley (1995), 103 Ohio App.3d 213, 227, appeal not allowed,73 Ohio St.3d 1428. See, also, R.C. 2125.01 (action for wrongful death). To prevail in a wrongful death action, as well as a survivorship action, a plaintiff "must show that the defendant owed the decedent a duty, that the defendant breached that duty, and that the defendant's breach of duty proximately caused the decedent's injuries and death." Garcia v. Pukas Family Flowers,Inc. (1996), 108 Ohio App.3d 683, 686, cause dismissed,75 Ohio St.3d 1472, appeal not allowed, 75 Ohio St.3d 1477.
 {¶ 67} Here, as discussed above, we have already concluded that M/I, as a matter of law, did not owe a duty to decedent. Therefore, absent a duty by M/I, plaintiff's wrongful death claims fail.
 {¶ 68} Accordingly, for the foregoing reasons, we overrule plaintiff's first assignment of error.
 {¶ 69} Plaintiff's second assignment of error asserts that the trial court erred when it granted summary judgment in favor of Contract Lumber and Contract Framing because genuine issues of material fact exist to preclude judgment.
 {¶ 70} Based upon the evidence in the record, we find the trial court properly found that Contract Lumber was entitled to summary judgment. Here, Contract Lumber was the supplier of lumber and material for the construction project at which decedent was injured.[15] Plaintiff has not alleged, nor is there evidence in the record to support a finding that, defective materials proximately caused decedent's death. Neither is there evidence that Contract Lumber actively participated in the work activities of J.M. Construction, the independent subcontractor.
 {¶ 71} As to Contract Framing, to support her argument that genuine issues of material fact should preclude summary judgment in favor of Contract Framing, plaintiff, in part, relies uponSopkovich, supra.
 {¶ 72} Sopkovich, however, is distinguishable. Sopkovich
concerned a property owner's liability, not the liability of a contractor. Id. at 635, 643. Therefore, Sopkovich, as applied to Contract Framing, is inapposite.
 {¶ 73} Rather than Sopkovich, we find that Cafferkey v.Turner Constr. Co. (1986), 21 Ohio St.3d 110, Bond v. HowardCorp. (1995), 72 Ohio St.3d 332, and Burnep v. Labmark, Inc.
(June 17, 1999), Franklin App. No. 98AP-962, (Kennedy, J., dissenting), dismissed, appeal not allowed, 87 Ohio St.3d 1417, are relevant and instructive.
 {¶ 74} In Cafferkey, two employees of an independent subcontractor were injured during an explosion at a construction site and later died of these injuries. Separate tort actions were brought against the general contractor and the independent subcontractor. In affirming the appellate court's judgment, theCafferkey court construed Hirschbach v. Cincinnati Gas Elec.Co. (1983), 6 Ohio St.3d 206. See Hirschbach, the syllabus of which reads as follows:
One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor.
 {¶ 75} Focusing on a general contractor's control over the work activities of the independent subcontractor, the Cafferkey
court observed that "[the general contractor] may have known about some of [the subcontractor's] activities, but that knowledge does not constitute `actual participation' in those activities within the Hirschbach rule." Id. at 112. TheCafferkey court further found that a concern for safety did not constitute the kind of active participation in the subcontractor's work that was legally required to create a duty of care to the subcontractor's employees. Id. at 113.
 {¶ 76} The Cafferkey court explained that while the general contractor retained the ability to monitor and coordinate the activities of all subcontractors to ensure compliance with the architect's specifications, the various contractual rights reserved by the general contractor did not empower the general contractor to control the means or manner of the subcontractor's performance. Id.
 {¶ 77} Accordingly, the Cafferkey court held that "[a] general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." Id. at syllabus. See, also, Sopkovich, at 639 (discussion of Cafferkey).
 {¶ 78} Later, in Bond, supra, the Supreme Court of Ohio refined its holding in Cafferkey and "cut a definitive line between those situations in which a general contractor can be said to have `actively participated' in the work of an independent subcontractor, and those situations in which a general contractor merely exercises a general supervisory role over the construction project." Sopkovich, at 640. In Bond,
the court held in the syllabus, as follows:
For purposes of establishing liability to the injured employee of an independent subcontractor, "actively participated" means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project.
 {¶ 79} In Bond, the Supreme Court considered, among other things, whether a general contractor owed a duty of care to an employee of a subcontractor who was injured at a construction site when he fell through an unguarded stairwell opening. Arguing that summary judgment was improperly granted in favor of the general contractor, the appellants relied upon portions of a contract between General Cinema Corporation, the entity that hired the general contractor, and the general contractor, and portions of a contract between the general contractor and the subcontractor. Appellants asserted that the contract between General Cinema and the general contractor required the general contractor to comply with and enforce any applicable safety laws, rules or regulations. Appellants also contended that, according to the contract between the general contractor and its subcontractors, the subcontractors were required to obtain permission and special instructions from the general contractor prior to beginning work in any area on the jobsite, and that the general contractor had a right to remove any equipment and personnel that created an unsafe condition at the site. Id. at 334.
 {¶ 80} In its analysis, the Bond court examined prior relevant decisions in Wellman v. E. Ohio Gas Co. (1953),160 Ohio St. 103,[16] Hirschbach, supra, and Cafferkey.
Finding that the general contractor was entitled to summary judgment, the Bond court explained that the general contractor did not actively participate in the work performed by the subcontractor because the general contractor neither gave nor denied permission for the critical acts that led to the subcontractor's employee's injuries — the placing of materials used by the employee in constructing the wall. Bond, at 336. The Bond court noted that the injured employee was aware that materials for the construction of the wall had been placed near the opening and that a railing had not been placed in front of the opening. Id. The Bond court rejected appellants' assertions that contractual provisions involving the general contractor created a duty of care. The Bond court explained that the contractual provisions "simply demonstrate that [the general contractor] retained general supervisory capacity over the construction project and, in particular, that it retained control over safety policies and procedures at the site." Id. The Bond
court further explained that "[t]he general contractor's retention of the authority to monitor and coordinate activities of the subcontractors and the retention of control over safety policies and procedures do not rise to the level of active participation, thereby extending a duty of care from a general contractor to a subcontractor's employees." Id. at 336-337.
 {¶ 81} In Burnep, supra, this court found that the facts of that case fell "squarely under Bond" when it affirmed summary judgment in favor of a general contractor. In that case, an independent contractor was injured when he fell through a skylight while working on a roof. On appeal, the independent contractor asserted the trial court erred because the general contractor exercised exclusive control over the working environment and the trial court failed to properly applySopkovich, supra. The Burnep court found that the general contractor did not direct, control, or participate in the actual roof-removal work of the independent contractor. The Burnep
court concluded that the general contractor's agreement with the property owner to retain control over safety issues at the jobsite did not rise to the level of active participation as defined in Hirschbach, Cafferkey, and Bond. The Burnep
court also concluded that Sopkovich was manifestly distinguishable.
 {¶ 82} Just as the Burnep court found a "remarkable symmetry of facts" between Bond and the facts in Burnep, we find a remarkable similarity between the facts of this case and those in Bond.
 {¶ 83} Here, just as in Bond, Contract Framing retained general supervisory capacity over the construction project and it retained control over safety policies and procedures.[17]
However, "[a] general contractor's retention of the authority to monitor and coordinate activities of the subcontractors and the retention of control over safety policies and procedures do not rise to the level of active participation, thereby extending a duty of care from a general contractor to a subcontractor's employees." Bond, at 336-337. Even construing the evidence in plaintiff's favor, we find no evidence that Contract Framing directed the activity which resulted in decedent's injuries or that Contract Framing gave or denied permission for critical acts that led to his injuries. Therefore, applying Bond, we conclude that, as a matter of law, Contract Framing owed no duty to decedent.
 {¶ 84} Finding that Contract Framing did not assume a duty to decedent, we find that, as a matter of law, plaintiff's common law negligence claim against Contract Framing, as well as plaintiff's claim that Contract Framing's failure to warn decedent of the open stairwell constituted wanton and willful misconduct, must fail.
 {¶ 85} Plaintiff also claims that Contract Framing violated Sections 1926.501 and 1926.502, Title 29, C.F.R., and former Ohio Adm. Code 4121:1-3-04 and, therefore, it is liable for decedent's injuries. Even assuming that these administrative regulations and rules create an independent cause of action, plaintiff's claims fail as a matter of law. Sections 1926.501 and 1926.502, Title 29, C.F.R., and former Ohio Adm. Code 4121:1-3-04 apply to employers. Here, it is undisputed that Contract Framing was not decedent's employer. Thus, even assuming that these administrative regulations and rules create an independent cause of action, we conclude that plaintiff's allegations of liability premised upon these regulations and rules, as a matter of law, cannot lie as applied to Contract Framing.
 {¶ 86} Neither can we find that liability attaches to Contract Framing based upon the "frequenter statutes" as codified in R.C. 4101.11 and 4101.12.
 {¶ 87} R.C. 4101.11 and 4101.12 pertain to the duties of employers and these statutes "impose essentially the same duty of care upon an owner or occupier of property as that imposed at common law." Michaels, supra, at 477, fn. 2. See, generally, R.C. 4101.11 and 4101.12. Moreover, "[t]he body of case law addressing the duties of general contractors to frequenters of a work site almost exclusively addresses injuries to employees of subcontractors of the general contractors." Robinson v. LeachConstr. Co., Cuyahoga App. No. 80534, 2003-Ohio-1949, at ¶ 20. "In those cases, the courts have held that unless the general contractor actively participates in the activity which causes the injury, it cannot be held responsible for the injury." Id. "Further, a `general contractor's retention of the authority to monitor and coordinate the activities of subcontractors and the retention of control over safety policies and procedures do not rise to the level of active participation, thereby extending a duty of care from a general contractor to a subcontractor's employees.'" Id., quoting Bond, supra, at 337, citation omitted. See, also, Pfaff v. Pahl Ready Mix Concrete, Inc.
(Feb. 1, 2002), Lucas App. No. L-01-1306.
 {¶ 88} Here, there is no evidence that Contract Framing participated in the activity that caused decedent's injuries, neither is there evidence that Contract Framing directed the activities of J.M. Construction or its employees. Accordingly, plaintiff's claim that Contract Framing is liable pursuant to R.C. 4101.11 and 4101.12 fails as a matter of law.
 {¶ 89} Furthermore, having concluded that, as a matter of law, a legally cognizable tort against Contract Framing does not lie, we therefore must also conclude that plaintiff's loss of consortium claims and wrongful death claims against Contract Framing must fail.
 {¶ 90} Therefore, for the foregoing reasons, plaintiff's second assignment of error is overruled.
 {¶ 91} For the foregoing reasons, both of plaintiff's assignments of error are overuled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus, P.J., and Brown, J., concur.
[1] J.M. Construction is more properly James McClary d/b/a J.M. Construction. However, for simplicity, in this opinion we shall refer to the company as "J.M. Construction."
[2] On September 11, 2002, in an agreed entry, plaintiff and Contract Framing stipulated that it was a proper party and should be substituted for Contract Lumber South. Accordingly, the trial court ordered that Contract Framing should be substituted as a defendant in the action. The trial court also ordered that plaintiff's allegations in her complaint against Contract Lumber and Contract Lumber South should be incorporated by reference against Contract Framing and, pursuant to Civ.R. 15(C), plaintiff's allegations were deemed to relate back to the date of the filing of plaintiff's complaint. Additionally, the trial court ordered that filings by Contract Lumber and Contract Lumber South would be deemed to have been filed on behalf of Contract Framing.
[3] Former R.C. 2505.02(A)(1) and (B)(1), which were in effect when plaintiff perfected her appeal, were unaffected by the September 2004 amendments to R.C. 2505.02. Therefore, even assuming arguendo that former R.C. 2505.02 should be applied to this appeal and that it is error to apply the current version of R.C. 2505.02, such error is harmless. See, generally, Civ.R. 61 (harmless error).
[4] Aug. 5, 2002 Depo. of James McClary, at 20-21; Aug. 16, 2002 Depo. of James McClary, at 8-9.
[5] Aug. 5, 2002 Depo. of James McClary, at 16, 18-19; Aug. 16, 2002 Depo. of James McClary, at 7.
[6] Aug. 16, 2002 Depo. of James McClary, at 8.
[7] Id.
[8] See 2003-04 Ohio Monthly Record 1165.
[9] See 2003-04 Ohio Monthly Record 1164.
[10] R.C. 4101.11 is also known as the "frequenter statute."Eicher v. U.S. Steel Corp. (1987), 32 Ohio St.3d 248, 249.
[11] Aug. 16, 2002 Depo. of James McClary, at 25.
[12] Depo. of Tommy McClary, at 11.
[13] Depo. of Tommy McClary, at 41-42.
[14] Parental consortium "includes society, companionship, affection, comfort, guidance and counsel." Id. Spousal consortium "consists of society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." Clouston, at paragraph three of the syllabus.
[15] August 5 Depo. of James McClary, at 46-47.
[16] See Bond, at 334, quoting Wellman, paragraph one of the syllabus (observing that Wellman held: "`[w]here an independent contractor undertakes to do work for another in thevery doing of which there are elements of * * * danger * * *, no liability * * * ordinarily attaches to the one who engaged the services of the independent contractor'"). (Emphasis sic.)
[17] Depo. of Donn McClary, at 27-28, 34, 37, 44.